UNITED STATES of America, Appellee,

v.

James L. CONLEY, Appellant.

No. 85–5067.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 11, 1985.

Decided Dec. 18, 1985.

Daniel L. Robey, Falls Church, Va. (Charles W. Kramer, Alexandria, Va., on brief), for appellant.

William G. Otis, Asst. U.S. Atty. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., Richard A. Cohen, Sp. Asst. U.S. Atty., on brief), for appellee.

Before RUSSELL, PHILLIPS and MURNAGHAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

James Conley appeals from his conviction for the murder of a fellow inmate at the Lorton Penitentiary, in violation of 18 U.S.C. §§ 1111 and 1112. Conley challenges numerous rulings by the district court, but his major contention, and the only issue that merits discussion on appeal, is that he was interrogated by prison guards in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the court erred in denying his motion to suppress his resulting statements at trial.[1] We conclude that, although Conley was in prison when he was questioned about the crime, *Miranda* warnings were not required under the circumstances of this case, and we therefore affirm.

I

On February 2, 1982, Otis Peterson, James Conley and other inmates left their cells to go to breakfast. Several minutes later, Peterson, bleeding from fatal knife wounds to his head, neck and back, returned to the cellblock and collapsed. After the attack, a prison official followed a trail of blood leading from the site of the stabbing and discovered a blood-stained knife and various items of bloody clothing. Lorton officials were also directed to conduct a body search of inmates for lacerations or bruises. The search revealed an Ace bandage covering a two-inch gouge-type wound on Conley's left wrist. Conley was thereafter handcuffed and escorted to a small conference room in the prison "control center" to await transfer to the infirmary for medical treatment of the wound.

While in the conference room, both before and after he was treated at the infirmary, Conley discussed the assault on Peterson with corrections officers Boiardi and Corbett. Conley initiated the first conversation with Boiardi by asking "What's this all about?" Boiardi responded by asking Conley how he had been injured and, in the course of this discussion, Conley maintained that he had observed two inmates attacking Peterson and that he had been stabbed in the wrist during a rescue attempt. According to Boiardi, this conversation lasted ten or fifteen minutes.

Conley wore handcuffs to the control center and full restraints when he returned from the infirmary. Upon his return, thirty minutes to an hour later, Officer Corbett asked Conley if "you're up to your same old shit again." Conley replied that he and Peterson were "cool," (i.e., friends), but that Peterson had a bad attitude. Boiardi questioned Conley again about the identity of the alleged assailants. Conley responded that he had been unable to recognize the attackers because both men wore ski masks.[2]

1. An earlier conviction on the same charges was reversed on appeal, *United States v. Conley,* 740 F.2d 963 (1984) (unpublished), on other grounds. The conviction from which Conley now appeals was the result of a second trial on February 4, 1985.

2. Conley's statements were intended to exonerate him. The Supreme Court has made it clear that any distinction between inculpatory and exculpatory statements has no significance for purposes of applying *Miranda.* 384 U.S. at 476–77, 86 S.Ct. at 1628–29; *see also Rhode Island v. Innis,* 446 U.S. 291, 301 n. 5, 100 S.Ct. 1682, 1690 n. 5, 64 L.Ed.2d 297 (1980).

The government concedes that at no point during these conversations was Conley warned of his rights under *Miranda*. Following denial of his pre-trial motion to suppress, Conley's statements were admitted at trial, he was convicted, and this appeal followed.

## II

Conley contends that he was in prison and therefore "in custody" at all times during his conversations with prison officials in connection with the Peterson murder. "Custodial interrogation," which must be preceded by *Miranda* warnings, is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. The *Miranda* Court distinguished "[g]eneral on-the-scene questioning as to facts surrounding a crime" as beyond the reach of the rule laid down in that case. *Id.* at 477, 86 S.Ct. at 1629.

This case involves an application of the *Miranda* rule in a prison setting. Applied literally, the rule would operate to require that every question directed to a prison inmate in connection with what ultimately may prove to be criminal activity be prefaced with *Miranda* warnings because a prisoner is always "in custody" in the purest sense. Conley contends that the Supreme Court has adopted just such a *per se* approach to prisoner interrogations. In *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), an inmate

was questioned by an Internal Revenue Service agent about possible criminal tax violations. The government urged that warnings were not required because the prisoner was at the time of the interview incarcerated for a crime unrelated to the subject of the interrogation. The Court rejected this argument and held that, under the circumstances revealed, Mathis was entitled to, and thus wrongly deprived of, *Miranda* warnings. *Id.* at 4–5, 88 S.Ct. at 1504–05.

*Mathis* clearly holds that the fact that a defendant is imprisoned on an unrelated matter does not necessarily remove the necessity for *Miranda* warnings. Nothing in that opinion, however, suggests that an inmate is automatically "in custody" and therefore entitled to *Miranda* warnings, merely by virtue of his prisoner status. The Ninth Circuit faced precisely this issue in *Cervantes v. Walker*, 589 F.2d 424 (9th Cir.1978), in which an inmate-defendant argued, as here, that *Mathis* foreclosed the "custody" issue in prisoner interrogations. Cervantes had admitted to a prison guard that the substance in his possession was marijuana and argued, on appeal, that his statement was elicited in violation of *Miranda* and hence inadmissible at trial. The court held that *Mathis* articulated no such *per se* application of the *Miranda* rule in favor of prison inmates and that the interrogation, under the circumstances in that case, was not custodial.[3]

█ We also decline to read *Mathis* as compelling the use of *Miranda* warnings

---

**3.** *See also Flittie v. Solem*, 751 F.2d 967, 974 (8th Cir.1985), and *United States v. Scalf*, 725 F.2d 1272, 1275 (10th Cir.1984), approving the view in *Cervantes* that an inmate is not *ipso facto* "in custody" under *Mathis*.

Other circuits have concluded that a prison inmate was in custody for *Miranda* purposes, citing *Mathis*, without addressing the more basic issue of whether that decision mandates the giving of *Miranda* warnings to prison inmates in all circumstances. *See, e.g., Battie v. Estelle*, 655 F.2d 692 (5th Cir.1981), *Palmigiano v. Baxter*, 510 F.2d 534 (1st Cir.1974), *rev'd on other grounds*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), *Childs v. Cardwell*, 452 F.2d 541 (6th Cir.1971).

This court held, in *United States v. Redfield*, 402 F.2d 454 (4th Cir.1968) (per curiam), that an inmate's statements made at a prison disciplinary hearing without the benefit of *Miranda* warnings were inadmissible at trial. The court's holding and citation to the then recently decided *Mathis* opinion are not inconsistent with *Cervantes*. In light of the inherently accusatorial nature of the prison disciplinary proceeding at which Redfield's statements were elicited, they would have been inadmissible as the result of custodial interrogation even under the "added imposition on freedom of movement" standard that we apply today.

prior to all prisoner interrogations and hold that a prison inmate is not automatically always in "custody" within the meaning of *Miranda*. Conley's view of the *Mathis* decision would seriously disrupt prison administration by requiring, as a prudential measure, formal warnings prior to many of the myriad informal conversations between inmates and prison guards which may touch on past or future criminal activity and which may yield potentially incriminating statements useful at trial. As the Ninth Circuit pointed out, this approach would "torture [*Miranda*] to the illogical position of providing greater protection to a prisoner than to his nonimprisoned counterpart." *Cervantes*, 589 F.2d at 427. Such a result would be directly at odds with established constitutional doctrine that while persons in government-imposed confinement retain various rights secured by the Bill of Rights, they retain them in forms qualified by the exigencies of prison administration and the special governmental interests that result. *See Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (qualified sixth amendment rights of inmates in prison disciplinary proceedings); *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (qualified fifth amendment liberty interest of pre-trial detainee); *Hudson v. Palmer*, —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (qualified fourth amendment right of inmates).

▪ The question remains whether there was a custodial interrogation in this case. The Supreme Court has held that notwithstanding a "coercive environment," there is no custody for *Miranda* purposes unless the questioning takes place "in a context where [the questioned person's] freedom to depart [is] restricted...." *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam). The Court's most recent articulation of the custody standard refines the inquiry to whether there is "a 'formal arrest or restraint on

freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam), *quoting Oregon v. Mathiason*.

Prisoner interrogation simply does not lend itself easily to analysis under the traditional formulations of the *Miranda* rule. A rational inmate will always accurately perceive that his ultimate freedom of movement is absolutely restrained and that he is never at liberty to leave an interview conducted by prison or other government officials. Evaluation of prisoner interrogations in traditional freedom-to-depart terms would be tantamount to a *per se* finding of "custody," a result we refuse to read into the *Mathis* decision.

A different approach to the custody determination is warranted in the paradigmatic custodial prison setting where, by definition, the entire population is under restraint of free movement. The Ninth Circuit has taken the position that "restriction" is a relative concept and that, in this context, it "necessarily implies a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement." *Cervantes*, 589 F.2d at 428. Thus, the court looked to the circumstances of the interrogation to determine whether the inmate was subjected to more than the usual restraint on a prisoner's liberty to depart.

We agree that this approach best reconciles *Mathis* and *Miranda* in the unique context of prisons and the problems peculiar to their administration. Applying this standard to the facts of this case, we find that Conley was not "in custody" for *Miranda* purposes. Conley was taken to the conference area primarily to await medical treatment and not for the purpose of interrogation. The discussions were brief[4] and were interrupted by Conley's trip to the infirmary. Although Conley wore handcuffs and, at some points, full restraints, evidence in the record indicates that this

---

4. The duration of the discussions, apart from Boiardi's first conversation with Conley which he testified lasted no longer than ten or fifteen minutes, is unclear from the record. The substance of the later interviews, however, suggests that they were brief.

was standard procedure for transferring inmates to the infirmary or elsewhere in this maximum security facility. Both officers knew Conley,[5] addressed him by his nickname, and testified that they questioned him as a witness to, rather than a suspect in, the Peterson murder. Conley had previously worked for Boiardi for several months and the officer testified that he and Conley were "very familiar" and on "friendly terms." Both officers testified that Conley spoke "freely" during the interviews and Conley concedes, for purposes of this appeal, that his statements were voluntarily made.

Under the circumstances, Conley's freedom of movement cannot be characterized as more restricted than that of other prisoners in transit to and from the facility, either by virtue of his confinement or the nature of the questioning by prison personnel. Accordingly, *Miranda* warnings were not required and Conley's statements were properly admitted at trial.[6]

III

Conley also raises issues relating to the taking and admission of blood samples at trial; the admission of testimony by prison guards concerning an experiment establishing the travel time between Conley's location and the murder site; the district court's refusal to prohibit cross-examination by the prosecution of a defense witness who had been determined by the court to be "unavailable" under Fed.R.Evid. 804(b)(1); and the reduction of the charge, over Conley's objection, from first to second degree murder. We have reviewed these allegations and find no error.

AFFIRMED.

---

5. The district court appears to have applied *Mathis* consistent with the *Cervantes* "added imposition on freedom" standard when it excluded statements made by Conley to an FBI investigator, viewing the latter as "in a different category when you read the cases. He's an outside agent who has come in. And under *Mathis* ... I think I have to suppress and grant the motion as to him."

6. Any residual issue of voluntariness is disposed of by reference to Conley's brief, in which he admits that he "does not challenge the voluntariness of his statements, but instead claims only that they resulted from custodial interrogation that was not preceded by proper *Miranda* warnings." (Appellant's br. 14.)