UNITED STATES of America

v.

Duane Lee HAYES.

Crim. No. HCR 86–79.

United States District Court,
N.D. Indiana,
Hammond Division.

Oct. 20, 1986.

Gregory A. Vega, Asst. U.S. Atty., Hammond, Ind., for plaintiff.

Hawk P.C. Kautz, Merrillville, Ind., for defendant.

## ORDER

MOODY, District Judge.

This matter is before the court on a Motion for Suppression of Evidence and a Motion for Dismissal of Indictment filed by defendant Duane Lee Hayes on August 7, 1986. The United States of America ("Government") filed responses to Hayes' motions on September 23, 1986.[1] An evidentiary hearing was held with regard to these motions on October 9, 1986 at 9:00 a.m. For the reasons discussed below, Hayes' motions are DENIED.

## I.

## BACKGROUND

Hayes is charged with one count of making a false statement while purchasing a firearm in violation of Chapter 44, Title 18, United States Code. The indictment charges that the offense occurred on June 6, 1982. Evidence presented at the October 9, 1986 hearing established the following uncontroverted facts.

On July 4, 1982, Hayes was arrested by members of the Hammond, Indiana, police department on unrelated criminal charges filed by the Lake County prosecutor, and was incarcerated in the Hammond, Indiana city jail until transported to the Lake County jail in Crown Point, Indiana, on July 7, 1982. While incarcerated at the Lake County jail, Hayes was advised that he had been charged with theft by deception by state authorities in Whitley County, Indiana, for passing bad checks, including the check written to purchase the same firearm which forms the basis for the instant federal charge. At this point during the hearing, the facts, as presented by Hayes and the Government, became disputed.

According to Hayes' testimony, in mid-July, 1982, agents of the United States Bureau of Alcohol, Tobacco and Firearms ("ATF") were informed that Hayes had information about certain weapons secreted away outside the confines of the Lake County jail. Based on this information, certain ATF agents traveled to Lake County jail to question Hayes about the weapons.

Hayes further testified that one of the ATF agents who visited him in mid-July, 1982, was Special Agent Dale A.C. Munroe. Hayes testified that Agent Munroe began questioning him about the weapons without informing Hayes of his *Miranda* rights. Furthermore, Hayes contends that Agent Munroe indicated to him that, in exchange for information relating to the weapons, Munroe would not pursue any federal prosecution for charges which might arise from the information Hayes would provide.

Hayes claims to have provided Agent Munroe with information regarding the location of the weapons in Hammond, Indiana. Hayes testified that Munroe returned to the Lake County jail to interview him on at least two other occasions. The second visit reportedly occurred on or about August 9, 1982. On that date, two other ATF agents, Rockliff and Van Amburgh, also interviewed Hayes. Hayes

---

1. The Government was given additional time to respond to Hayes' motions on September 2, 1986. Both parties agreed to the extension of time because of certain difficulties they were experiencing in locating necessary witnesses.

maintains that Rockliff and Van Amburgh reiterated the alleged agreement reached between Hayes and Munroe in mid-July, 1982. According to Hayes, his meeting with Rockliff and Van Amburgh lasted only a few minutes when Munroe arrived and resumed his interview of Hayes in private. Again, Hayes testified that he was not advised of his *Miranda* rights at this second interview. Finally, sometime between October and November, 1982, Munroe reportedly returned to Lake County jail for the third time. On this occasion, Agent Munroe reportedly delivered a wallet to Hayes. The wallet, according to Hayes, was found with the weapons that he helped Munroe locate.

After serving his sentence on the unrelated state charges, Hayes entered a deferred prosecution agreement with the prosecutor's office of Whitley County, Indiana, on the bad-check violations. As part of the agreement, Hayes was to make financial restitution as a result of his violations.

Hayes was released from state prison in May, 1985. In September, 1985 Hayes met with Detective James Lawson of the Hammond, Indiana, Police Department. Hayes was seeking a business license and was required to submit to a police investigation as part of the license-application process. Hayes testified that Lawson proposed that Hayes act as an informant for Lawson, in exchange for which Lawson would aid in the processing of Hayes' license application. Hayes stated that he refused the offer.

A week later, Hayes claims to have met with Lawson again. At this second meeting, Lawson was accompanied by ATF Agents Holmes and Malone, who participated in the interview. Hayes reported that the offer to become an informant for Lawson was extended again and that he refused for the second time.

A third meeting between Hayes, Lawson and Holmes reportedly took place in December, 1985. At this meeting, according to Hayes, Holmes threatened to prosecute Hayes for the earlier firearm violation if Hayes continued to refuse to cooperate. Holmes allegedly showed Hayes a copy of the ATF form (ATF Form 4473) which forms the basis of the federal false-statement charge in the instant action. Hayes stated that he again declined the offer and that the ATF then initiated the present charge against him.

The Government's version of the facts differs substantially as to the content of the various meetings between Hayes and certain ATF agents. Agent Munroe, who is now retired from the ATF, testified that he had no recollection of specific dealings with defendant Hayes. Munroe did not remember ever meeting with Hayes at the Lake County jail or anywhere else. Because Munroe was unable to recall any details pertaining to the Hayes investigation, he was not able to specifically deny making an immunity agreement with Hayes. However, Munroe did state that it was never his practice to make such deals; he related that it was his understanding that he did not have the authority to grant immunity to any defendant. Instead, Munroe testified that he would routinely investigate alleged violations and then pass the information obtained through the investigation to the United States Attorney's Office and the U.S. Attorney made all immunity decisions.

There was a dispute at the hearing as to whether or not Munroe ever met with Hayes. Besides Munroe's inability to recall any dealings with Hayes, records from the Lake County jail during the time in question did not reveal that Munroe ever visited Hayes. Copies of these records, which were introduced into evidence at the hearing, did reveal that agents Rockliff and Van Amburgh visited Hayes on August 9, 1982, but there was no indication that Munroe ever visited Hayes.[2]

---

2. There was some confusion at the hearing as to when a visitor was required to sign in at the Lake County jail. Defense counsel attempted to

show that when Agent Munroe allegedly visited Hayes, he was not required to sign in because the visit occurred in a nonsecure area of the

Agent Rockliff testified at the hearing that he and Agent Van Amburgh did meet with Hayes on August 9, 1982. Rockliff indicated that he visited Hayes in response to Hayes' phone call to the ATF requesting a meeting. Rockliff stated that Munroe was never present at the meeting he had with Hayes. Rockliff further stated that neither he, nor anyone else to his knowledge, ever agreed not to prosecute Hayes in connection with the gun violation. Rockliff confirmed that Hayes was not given *Miranda* warnings at that interview. Rockliff explained that he did not see any need to advise Hayes of his rights because Hayes was not the subject of any investigation. Rockliff said he was merely responding to Hayes' request for a meeting and was there to listen to whatever Hayes had to say. Rockliff did not expect to hear any incriminating evidence from Hayes. In fact, Rockliff testified that he did not believe the statements made by Hayes at that interview.[3]

Rockliff testified that Hayes did not discuss any details relating to the federal firearms charge. Because Rockliff found Hayes totally unreliable, Rockliff stated that he did not act upon or use any information he received from Hayes.

Rockliff also testified that ATF agents do not have authority to grant immunity to any defendant. Finally, Rockliff stated that he did not meet or deal with Hayes after that August 9, 1982 meeting.

## II.

### MOTION TO SUPPRESS

In his suppression motion, Hayes puts forth two reasons for excluding evidence at trial in this case. Hayes contends that (1) he was not properly advised of his *Miranda* rights before questioning by federal agents, and (2) that federal agents agreed not to prosecute Hayes on the instant fire-

arm charge in exchange for his cooperation.

### A. *Miranda Rights*

It is well settled that a suspect or defendant must receive *Miranda* warnings before "custodial interrogation." *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612. It is equally well settled that the fact that a defendant is imprisoned on an unrelated state matter does not necessarily remove the necessity for giving *Miranda* warnings by federal agents. In *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1976), the Supreme Court found a *Miranda* violation where an Internal Revenue Service agent failed to give a defendant *Miranda* warnings when questioning him about his prior income tax returns while the defendant was incarcerated in a state jail serving a state sentence.

In the instant case, Hayes was in state custody serving a state sentence when he met with federal agents of the ATF. Thus, the fact that Hayes was being held by state authorities on an unrelated state charge does not necessarily obviate the need for *Miranda* warnings. Indeed, what is required is a finding of "custodial interrogation."

This case involves an application of the *Miranda* rule in a prison setting. It is not clear that a defendant who is in prison is "in custody" for purposes of *Miranda* at all times. If such a per se rule of custody were applied to the prison setting it would operate to require that every question directed to a prison inmate in connection with what ultimately may prove to be criminal activity be prefaced with *Miranda* warnings.

---

prison. However, defense counsel failed to establish exactly what the procedures were at the jail at the time in question; nor was he able to establish a clear record on where each of the interviews took place in the jail.

3. Rockliff referred to an entry in his daily log from 1982 in which he had written that he found Hayes' comments unreliable.

Recently, the Court of Appeals for the Fourth Circuit addressed this very issue in *United States v. Conley*, 779 F.2d 970 (1985). There the court rejected the per se custody interpretation of *Miranda* in a prison environment and instead adopted a more relative concept of restraint on freedom. The court looked to the circumstances of the interrogation to determine whether the inmate was subjected to more than the usual restraint on a prisoner's liberty to depart. *Id.* at 973.[4]

In addition to the "in custody" requirement, there must also be a finding of "interrogation." In *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court held that "interrogation" referred to "not only express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 302, 100 S.Ct. at 1690.

In the present case, there is conflicting testimony on the circumstances surrounding the meetings between Hayes and certain ATF agents. Hayes maintains that he was questioned by Agent Munroe and others while he was incarcerated at the Lake County jail. Agent Rockliff admits to meeting with Hayes on August 9, 1985; however, Rockliff testified that he did not go to that meeting with questions to ask Hayes. In fact, Rockliff stated, and Hayes admitted, that Hayes himself initiated the meeting by calling the Bureau of Alcohol, Tobacco and Firearms and requested a meeting. Furthermore, Rockliff stated

that at the time of the meeting Hayes was not the subject of any ATF investigation; Rockliff went to the Lake County jail to hear what Hayes had to say. Agent Rockliff specifically testified that he had no reason to believe or expect that Hayes would offer any incriminating evidence.

The Court notes that Agent Rockliff's version of what happened at that meeting is supported by the Lake County jail records which show that only Rockliff and Van Amburgh visited Hayes on that day.[5] Moreover, the court finds that Hayes' credibility can legitimately be called into question on two other grounds. First, and most obvious, Hayes has a significant interest in the outcome of this matter. Fed.R.Evid. 601.[6] Second, Hayes' character for truthfulness is clouded by his earlier conviction for theft by deception—a crime involving dishonesty. Fed.R.Evid. 609.

■ Based on the foregoing, the court is inclined to place more reliance on the testimony of Agent Rockliff and other ATF agents concerning the circumstances of the meetings with Hayes. In so doing, the court finds that there were no meetings between Agent Munroe and Hayes. As to the August 9, 1982 meeting between Hayes, Rockliff and Van Amburgh, the court finds that that encounter did not constitute "custodial interrogation" for purposes of *Miranda*. First, applying the special test for prison situations as articulated by the Fourth Circuit in *United States v. Conley*, 779 F.2d 970 (1985), the court finds it doubtful that Hayes was "in custody" on August 9, 1982. There is no added imposition of freedom of movement for a prisoner who requests a meeting with law enforce-

4. The *Conley* court was actually following the reasoning of an earlier ninth circuit opinion, *Cervantes v. Walker*, 589 F.2d 424 (1978). *See also Flittie v. Solem*, 751 F.2d 967, 974 (8th Cir.1985), and *United States v. Scalf*, 725 F.2d 1272, 1275 (10th Cir.1984), approving the view in *Cervantes* that an inmate is not *ipso facto* "in custody" under *Miranda*.

5. The court notes that these records are not conclusive on the question of whether or not Agent Munroe visited Hayes that day, however, they do tend to support the testimony of Agent Rockliff. Additionally, at the hearing, defense

counsel informed the court that he was unable to find Agent Munroe's name in the sign-in log at the jail either two months prior or two months subsequent to August 9, 1982.

6. A witness' "[i]nterest in the outcome of litigation … [is], of course, highly relevant to credibility and require[s] no special treatment to render [it] admissible along with other matters bearing upon the perception, memory, and narration of witnesses." *See* Advisory Committee Notes following Fed.R.Evid. 601.

ment officials. Because the encounter was held at Hayes' request, any added imposition on his freedom was voluntary and not coerced or mandated by the ATF agents. Likewise, the credible evidence at the hearing failed to establish that Hayes was "interrogated" within the meaning of *Miranda.* Hayes was not the subject of any investigation and Rockliff had no indication of what Hayes was going to say. There was no credible evidence of any questions, words or actions on the part of any federal agents which reasonably would have elicited incriminating evidence from Hayes. *Innis,* 446 U.S. at 302, 100 S.Ct. at 1690. In fact, Rockliff testified that Hayes did not offer any incriminating evidence during that meeting. Also, as noted earlier, the conversation between Hayes and the ATF agents was initiated by Hayes, making his statements voluntary rather than coerced.

Therefore, the court finds that there was no violation of Hayes' rights when the federal ATF agents met with him without informing him of his *Miranda* rights in this noncustodial and noninterrogative setting.[7]

### B. *Promise of Immunity*

■ Hayes next argues that evidence be excluded at trial because of the alleged promise of immunity by Agent Munroe and other ATF agents. While the decision to confer immunity lies with the executive branch, and not the judiciary, a formal grant of testimony immunity can only be made pursuant to the provisions of 18 U.S.C. §§ 6001-6005. However, the courts have developed a concept of "nonstatutory immunity" by which courts will enforce an informal or procedurally flawed grant of immunity on equitable grounds. *See Rowe v. Griffin,* 676 F.2d 524 (11th Cir.1982); *United States v. Weiss,* 599 F.2d 730 (5th Cir.1979); *United States v. Calimano,* 576 F.2d 637 (5th Cir.1978).[8] "[A]s a matter of fair conduct, the government ought to be required to honor such an agreement when it appears from the record that: (1) an agreement was made; (2) the defendant has performed on his side; and (3) the subsequent prosecution is directly related to offenses in which the defendant, pursuant to the agreement, either assisted with the investigation or testified for the government." *Rowe,* 676 F.2d at 527-28.

■ In *Rowe,* the court enforced the agreement between the defendant and the government only after the defendant made a *prima facie* showing that such an agreement was in fact made. Here, Hayes has not made this threshold showing. The only evidence offered in support of the alleged immunity agreement was the testimony of Hayes himself.[9] For the same reasons dis-

7. Even if the court held that Hayes was entitled to *Miranda* warnings the ultimate outcome would be the same in this case. The remedy for a *Miranda* violation is the exclusion of evidence gained as result of the violation. Here, both Agent Rockliff and Assistant United States Attorney Gregory Vega have stipulated that they made no use of the information provided by Hayes. Rockliff testified that he did not believe Hayes and did not pass any of his statements on to other agents. Through evidence introduced at the hearing, Mr. Vega demonstrated that the government had a separate and independent basis for its prosecution of Hayes on the firearm charge. Hayes admitted that after release from state prison he met with Detective Lawson of the Hammond Police Department and informed Lawson of the pending criminal charges against himself in Whitley County for the bad-check violations. Hayes informed Lawson that one of the checks was used to purchase the gun which is the subject of the instant charge. Lawson, after acquiring this information properly, then contacted ATF Agent Ron Holmes and told

him of the possible federal violation by Hayes. Holmes then initiated the investigation which led to the current charge against Hayes.

8. The enforcement of these informal grants of immunity arises, in part, as a correlary to the Supreme Court's application of a contractual analysis and holding that a defendant who pleads guilty as a result of plea bargaining has a due process right to enforcement of the bargain. *Cf. Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

9. At the hearing, Hayes argued that the fact that he was released from state custody in 1985 with a wallet in his possession somehow substantiated his version of what actually occurred; specifically, that Hayes did make an immunity agreement with the Government. According to Hayes, the wallet was stored with the guns that Hayes told the ATF agents about. And, Hayes asserts, that Agent Munroe returned the wallet to Hayes after finding the guns, thus, demonstrating that Hayes actually dealt with Munroe

cussed earlier, the court finds that the testimony of Hayes is less credible than that of the ATF agents who testified at the hearing and, therefore, the court holds that Hayes failed to make the necessary *prima facie* showing of the existence of the immunity agreement.

## III.

### MOTION TO DISMISS

Hayes has also moved for the court to dismiss the indictment in this case pursuant to Fed.R.Crim.P. 48(b) because of prejudicial delay by the Government in prosecuting Hayes. Hayes claims that the Government purposely delayed more than 48 months before prosecuting him on the present charge and that this delay substantially impaired his ability to defendant himself.

■ Federal Rule of Criminal Procedure 48(b) is applicable only to post-arrest situations, and therefore, does not apply to a defendant who was not arrested prior to indictment. *United States v. Primrose*, 718 F.2d 1484 (10th Cir.), *cert. denied*, 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1983). According to the Government's response to Hayes' motion, Hayes was called to answer to the charges in the instant indictment by way of criminal summons issued to him on or about June 27, 1986. Hayes was never under federal arrest for the instant charge before the indictment was issued, thus, Hayes' reliance upon Fed.R.Crim.P. 48(b) is misplaced.

Hayes also makes the most general reference to his rights to a speedy trial under the Speedy Trial Act and the Sixth Amendment, and his right to due process under the Fifth Amendment. The court finds that these grounds, as put forth by Hayes,

are meritless. At the hearing, it was consistently maintained by the ATF agents that they were not aware of Hayes' firearm's violation until Detective Lawson of the Hammond Police Department notified Agent Holmes on or about November 18, 1985. According to Agent Holmes, he initiated an investigation in this regard in January of 1986 that lasted to some time in February of that year. In June of 1986 the indictment was issued. Therefore, without more evidence of a delay, the court finds that Hayes' motion for dismissal of the indictment must fail.

### CONCLUSION

For the foregoing reasons, Hayes' Motion for Suppression of Evidence and Motion for Dismissal of Indictment are both DENIED.

---

and that Hayes made an agreement with Munroe. This argument, even if accepted as true, does not demonstrate the existence of an agreement between Hayes and the Government.

First, as already noted, Agent Munroe does not recall any dealings with Hayes whatsoever. Second, the other agents, Rockliff and Holmes, both testified that no agreement was ever made with Hayes. And, third, as pointed out by Mr. Vega at the hearing, Hayes was arrested by the

Hammond Police and not federal agents. It is quite possible that the wallet was returned to Hayes by Hammond police officials who confiscated it when Hayes was first arrested.

Nevertheless, even accepting the fact that Hayes entered jail without the wallet and was released with it, this does not establish a *prima facie* showing that ATF agents promised not to prosecute Hayes.