# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Ralph Shambaugh, Jr.

November 15, 1994

Case No. (Criminal) 82047

BY JUDGE RICHARD J. JAMBORSKY

Defendant moves the court to suppress statements allegedly made by Defendant to Correctional Officer Richard Wayne Franklin at the Eastern Regional Jail in Martinsburg, West Virginia, while Defendant was being held in custody on the Virginia extradition warrant for the instant case. Defendant denies a conversation with Officer Franklin but further alleges he was given no *Miranda* warnings and that he did not waive any *Miranda* rights. Defendant argues these statements alleged by Mr. Franklin were taken in violation of Defendant's rights under the Virginia, West Virginia, and United States Constitutions and should be suppressed. The Motion is denied.

In order for *Miranda* to apply, the Defendant must be in custody and interrogated. Although the court concludes that Correctional Officer Richard Wayne Franklin was an enforcement officer for *Miranda* purposes, the court finds *Miranda* does not apply because Defendant was not in custody and was not interrogated. Defendant's presence in the Martinsburg jail does not automatically result in a conclusion that he was in custody. In *United States v. Conley*, 779 F.2d 970 (4th Cir. 1985), the United States Court of Appeals for the Fourth Circuit held that a prisoner was not automatically in custody for *Miranda* purposes. The court stated an inmate is in custody when there is "a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement." *Conley* at 973 (citation omitted). In *Conley*, the defendant, a prisoner, made

statements to corrections officers regarding a stabbing in the prison. The defendant made these statements while handcuffed in the conference room and awaiting treatment at the infirmary for a wound on his wrist. The court concluded the defendant was not in custody for *Miranda* purposes because he was taken to the conference room not for interrogation purposes but to await treatment at the infirmary. Additionally, the defendant was handcuffed pursuant to standard procedure for transferring inmates to the infirmary. Moreover, the court added the defendant spoke freely and voluntarily to the corrections officers. Hence, the court found no additional imposition on the defendant's freedom of movement.

In *Blain v. Commonwealth*, 7 Va. App. 10, 371 S.E.2d 838 (1988), the Virginia Court of Appeals also held that a prisoner is not automatically in custody for *Miranda* purposes. In *Blain*, the defendant, an inmate in the state penitentiary, was questioned by prison investigators in connection with a murder that occurred in the prison. During the questioning, the defendant stood outside his cell with a correctional officer on each side of him while his cell was searched. Defendant sought to suppress the statements he made while being questioned on the grounds that *Miranda* was violated. The court used the test articulated in *Conley* for determining whether an inmate is in custody: "The test . . . is whether there has been a change in the surroundings of the prisoner which results in an added imposition on his freedom of movement." A prisoner is in "custody," then, if he is "subjected to more than the usual restraint on a prisoner's liberty to depart." *Id.* at 14 (citing *Conley*, other citations omitted). Since the search occurred while other prisoners were confined to their cells and the defendant stood outside his cell between two correctional officers, the court found that there was no added imposition on the defendant's freedom to move and, therefore, the defendant was not in custody.

In *United States v. Cooper*, 800 F.2d 412 (4th Cir. 1986), the Fourth Circuit again concluded that a prisoner was not automatically in custody for *Miranda* purposes. In *Cooper*, the court held that the defendants were not in custody because they made their statements in a conference room after being taken there for purposes other than interrogation and they were not handcuffed.

In the instant case, Shambaugh was not taken to a room for interrogation. Rather, he was in a pod or common area during the conversation. Moreover, Shambaugh had greater freedom of movement than did the defendants in *Conley* or in *Blain*. He was neither handcuffed nor standing between two corrections officers. Since his freedom of movement was not

more restricted at the time he made the statements than it was at other times during his incarceration, he was not in custody for the purposes of *Miranda*.

"The term 'interrogation' under *Miranda* includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Jenkins v. Commonwealth*, 244 Va. 445, 423 S.E.2d 360 (1992) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (other citations omitted)). In *Arizona v. Mauro*, 481 U.S. 520, 107 S. Ct. 1931 (1987), the Supreme Court held that the defendant was not subjected to interrogation or its functional equivalent when the police tape recorded a conversation between the defendant, who was in custody, and his wife while an officer was present. The court reasoned that tape recording the conversation was not a "psychological ploy that properly could be treated as the functional equivalent of interrogation." *Id*. at 1935. Additionally, the court reasoned that the police did not intend to send the wife in to speak with the defendant in order to obtain an incriminating statement. Finally, the court considered the perspective of the defendant and found that there was nothing to indicate that speaking to his wife made him feel coerced to incriminate himself. "In deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in *Miranda* and *Edwards*: *preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment.*" *Id*. at 1937 (Emphasis supplied).

In *Jenkins*, the Virginia Supreme Court held that a defendant's statement was made voluntarily and was, therefore, not the result of an interrogation. The defendant made a videotaped confession after being advised of his *Miranda* rights. "The test for voluntariness is whether the statement is the 'product of an essentially free and unconstrained choice by its maker,' or whether the maker's will 'has been overborne and his capacity for self-determination critically impaired'." *Id*. at 453-454 (citations omitted).

In *Murphy v. Holland*, 845 F.2d 83 (4th Cir. 1988), the United States Court of Appeals for the Fourth Circuit held that a defendant's inculpatory statement to a police officer in response to the officer's question was admissible. The defendant, Murphy, was arrested for murder and had been given *Miranda* warnings. Murphy stated that he was innocent and that Cutright committed the murder. The officers proceeded to arrest the wrong Cutright. After they arrested the correct Cutright, they brought Murphy to

the jail lobby to identify Cutright. When one of the officers asked whether they arrested the correct Cutright, Murphy confessed to the murder. The court concluded Murphy's confession was not the result of a coercion in spite of the fact that he made it in response to an officer's question. The court reasoned that there was no evidence of any psychological pressure or coercion. "The officer's single question of Murphy was designed to determine whether the correct man had been taken into custody . . . In this case, we are persuaded that there was no reason for the officers to know that they were likely to elicit any incriminating response from Murphy." *Id.* at 86.

In the instant case, Shambaugh's statements were not the product of an interrogation. Franklin testified that he initiated the conversation to "get to know" Shambaugh and to help determine whether Shambaugh would cause any type of trouble. Thus, Franklin's purpose in speaking to Shambaugh was not to obtain a confession. Additionally, Franklin did not use any psychological ploys to get Shambaugh to confess. When the circumstances are viewed from Shambaugh's perspective, there is nothing to indicate that Franklin's question, "What are they saying?" made Shambaugh feel coerced to make any incriminating statement. Like the officers in *Murphy*, there was no reason for Franklin to know he was likely to elicit any incriminating response from Shambaugh. Franklin's purpose in asking the question was to help him determine the type of relationship he was likely to have with Shambaugh. Shambaugh's response that he "didn't do it" but that he knew who did was made voluntarily.

Accordingly, the Court denies Defendant's Motion to Suppress.