REVISED MAY 27, 2011

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 11, 2011

Lyle W. Cayce
Clerk

No. 09-30807

CRAIG WILSON

Petitioner-Appellant

V.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY

Respondent-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before GARWOOD, ELROD, and SOUTHWICK, Circuit Judges.
GARWOOD, Circuit Judge:

Craig Wilson, a Louisiana state prisoner incarcerated at that state's Washington Correctional Institution (WCI), was convicted by a jury in Louisiana state court in December 1998 of the offense of attempted manslaughter for an attack on another inmate there, Ronald Edwards, and was sentenced to a forty-year term of imprisonment. Wilson applied for state habeas relief on various theories, including violation of his rights under Miranda v. Arizona, 86 S.Ct. 1602 (1966), but his writ was denied by the Louisiana courts. Wilson then filed a petition under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA),

before the district court.  The district court accepted the magistrate judge's recommendation to dismiss the section 2254 petition. Wilson appeals.  The question presented by this case is whether the state court unreasonably applied clearly established federal law, as determined by the United States Supreme Court, in denying relief on Wilson's Miranda claim.

FACTS AND PROCEEDINGS BELOW

On April 4, 1997, the defendant, Craig Wilson, was involved in an altercation at the WCI with two other inmates there, Jason Lanier and Ronald Edwards.  Two WCI Correctional Officers, Shannon Stewart and Dealis Williams, testified that they responded to a request for assistance, and upon arrival, saw that Sergeant Polkey, another correctional officer, was restraining Wilson and Lanier.  Sergeant Polkey indicated to Stewart that the two inmates had been fighting.

Wilson and Lanier were each then handcuffed and taken to separate rooms where a separate "post-fight interview" of each inmate was conducted. According to Officer Stewart, this procedure was for administrative purposes, to secure the area, and to ensure the safe and orderly operation of the institution.  Officer Stewart testified that Wilson was not under arrest during the interview, but rather "was just restrained for safety purposes," and stated that it was not common practice to arrest inmates for fights because they happen every day.  On cross-examination, Stewart testified that Wilson was not free to go while he was being questioned about the incident during this "post-fight" interview.

Officer Stewart testified that Wilson stated during the "post-fight interview" that Lanier had "disrespected him" by masturbating another inmate near Wilson's bed, and that "[I] knocked the dude, and then stomped on him."  Officer Stewart asked Wilson to clarify whom he had "stomped on,"

2

and Wilson responded: "I stomped on the other one." According to Officer Stewart, Wilson then demonstrated what he had done by jumping up and down three times, with both feet coming off the floor.

Officer Stewart testified that up to this point he had been unaware that anyone else other than Wilson and Lanier had been involved in the altercation; he thought that he was only investigating a fight between Wilson and Lanier. Stewart then went into the dorm where he discovered inmate Edwards lying on the floor, badly injured. According to a physician's testimony, as a result of his injuries, Edwards is now totally disabled; he is unable to stand up or walk, has to wear a diaper, and is unable to talk.

Wilson was charged in Louisiana state court with one count of attempted second degree murder of Edwards. Prior to his trial, Wilson moved to suppress evidence of the statements he made to the WCI Correctional Officers following the altercation, on the basis that he was not given a Miranda warning. Following a suppression hearing, at which Officers Stewart and Williams testified, the state trial court denied the motion to suppress. The court determined that the statements in question had been made during a preliminary investigative inquiry rather than during a custodial interrogation. As a result of the trial court's ruling on the motion to suppress, Stewart was permitted to testify at trial before the jury regarding Wilson's statements.

On December 2, 1998, the jury found Wilson guilty of the offense of attempted manslaughter of Edwards. The trial court initially imposed a twenty-year term of imprisonment, but subsequently vacated this sentence and imposed a forty-year term of imprisonment, the maximum for a multiple felony offender, upon determining that Wilson had a previous felony conviction for attempted armed robbery.

Wilson raised several issues on direct appeal to the Louisiana First Circuit Court of Appeal, including the claim of error in denying his motion to suppress the statements made to the correctional officers, but the appellate panel affirmed his conviction and sentence. Wilson argued in this regard that he was in custody when he was questioned regarding the altercation and that he therefore should have been advised of his Miranda rights prior to the questioning. The majority opinion for the three-judge panel affirmed Wilson's conviction and sentence, determining that Wilson was not in custody for purposes of Miranda during the investigation; one judge dissented on the Miranda suppression issue. See State v. Wilson, 798 So. 2d 333 (La. App. 1st Cir. 2001) (unpublished). The Louisiana Supreme Court, in orders without opinion, denied Wilson's application for writ of certiorari, State v. Wilson, 824 So. 2d 1188 (La. 2002) (three judges would grant writ), and motion for rehearing. State v. Wilson, 847 So. 2d 1258 (La. 2003) (one judge dissenting).

Wilson next applied for state habeas relief, which was denied by the state trial court. The state appellate court and the Louisiana Supreme Court, each in orders without opinion or noted dissent, denied Wilson's writ applications. See Ex parte Wilson, 917 So. 2d 1090 (La. 2005).

Wilson then filed the instant section 2254 petition. He raised nine claims for relief, including violation of his rights under Miranda. The district court initially dismissed Wilson's section 2254 petition as time barred, but this court reversed the district court's judgment and remanded for further proceedings. Wilson v. Cain, 564 F.3d 702, 707 (5th Cir. 2009).

On remand, the magistrate judge (MJ) issued a report addressing the merits of Wilson's claims. Applying the deferential standard of the Antiterrorism and Death Penalty Act (AEDPA), the MJ determined that the state court had not unreasonably applied clearly established federal law, as

4

determined by the Supreme Court of the United States, in determining that Wilson was not in custody for purposes of Miranda.  The MJ recommended that habeas relief be denied as to the Miranda claim and as to Wilson's other claims.  The district court adopted the MJ's report and dismissed Wilson's section 2254 petition.  Wilson appealed.  The district court denied a Certificate of Appealability, finding that petitioner had not made a substantial showing of the denial of a constitutional right.  This court, however, by order entered February 23, 2010, granted a Certificate of Appealability on the issue of whether Wilson's Miranda rights were violated when the statements he made following the altercation were used against him in his criminal trial, and denied a Certificate of Appealability on all other issues sought to be appealed.

## BACKGROUND

(1) The AEDPA Standard

The federal courts' statutory authority to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA).  Federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless" the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Because only Supreme Court jurisprudence provides "clearly established Federal law" under section 2254(d), where Supreme Court jurisprudence "give[s] no clear answer to the question presented, let alone one

5

in [petitioner]'s favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established federal law." Wright v. Van Patten, 128 S.Ct. 743, 747 (2008) (internal quotations omitted).

The Supreme Court has recently issued several rulings emphasizing the wide latitude that must be accorded to state court rulings under AEDPA review. See, e.g. Harrington v. Richter, 131 S.Ct. 770, 785 (2011); Premo v. Moore, 131 S.Ct. 733, 743 (2011); Renico v. Lett, 130 S.Ct. 1855, 1862-66 (2010); Thaler v. Haynes, 130 S.Ct. 1171, 1173-75 (2010).

In particular, the Supreme Court has stressed that section 2254, as amended by AEDPA, was meant to stop just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been "extreme malfunctions in the state criminal justice systems." See Harrington 131 S.Ct. at 786. As a result, the Supreme Court has concluded that, so long as "fairminded jurists could disagree" on the correctness of the state court's decision, federal habeas relief should not be granted. Id. (quoting Yarborough v. Alvarado, 124 S.Ct. 2140, 2149 (2004)). Therefore, even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable. See id. at 785 ("an unreasonable application of federal law is different from an incorrect application of federal law.") (quoting Williams v. Taylor, 120 S.Ct. 1495, 1522 (2000) (emphasis in original)).

(2) Miranda in the Prison Context

The Fifth Amendment provides that no person "...shall be compelled in any criminal case to be a witness against himself..." U.S. CONST. amend. V. In Miranda, the Supreme Court held the privilege against self-incrimination

requires that incriminating statements obtained during a custodial interrogation be inadmissible as evidence against a defendant unless the defendant was provided a full and effective warning of his rights.  See Miranda v. Arizona, 86 S.Ct. 1602 (1966).  However, a defendant who gives a statement to law enforcement officials in a non-custodial situation need not be advised of his Miranda rights.  Oregon v. Mathiason, 97 S.Ct. 711, 714 (1977).

A suspect is "in custodial interrogation" for purposes of Miranda "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest."  United States v. Bengivenga, 845 F.2d 593, 596 (5th Cir. 1988) (en banc).  Whether a person is "in custody" for Miranda purposes is determined by the objective circumstances of the interrogation.  Stansbury v. California, 114 S. Ct. 1526, 1530-31 (1994).

The Supreme Court applied the Miranda safeguards to inmates in a prison setting in Mathis v. United States, 88 S.Ct. 1503, 1504-05 (1968).  In Mathis, an Internal Revenue Service (IRS) agent questioned a prisoner, who was incarcerated in a state prison, about potential tax code violations, without providing Miranda warnings.  Id. at 1504.  The Government subsequently prosecuted Mathis for criminal tax violations using evidence elicited by the IRS agent during the prison visit.  Id.  Mathis appealed, arguing that the admission at trial of his statements to the IRS agent violated Miranda.  Id.  The Supreme Court agreed, holding that, under the circumstances, Mathis was entitled to and wrongly deprived of Miranda warnings.  Id. at 1504-05. The Court in Mathis rejected the Government's

7

arguments that Miranda warnings were not required because "these questions were asked as a part of a routine tax investigation where no criminal proceedings might even be brought" and because Mathis had not been put in jail by the IRS agents who questioned him and was in jail for "an entirely separate offense."" Id. at 1504. The Supreme Court determined that "[t]hese differences are too minor and shadowy to justify a departure from the well-considered conclusions of Miranda with reference to warnings to be given to a person held in custody." Id. at 1504-05.

The Supreme Court has recently clarified, however, that Miranda rights are not necessarily triggered simply because an individual is incarcerated. Maryland v. Shatzer, 130 S.Ct. 1213, 1224 (2010). In that case, which dealt with whether a break in custody of more than two weeks terminates an invocation of Miranda protections, the Supreme Court found that the return of a prisoner back to the general prison population, where he was serving an unrelated sentence, constituted a "break in Miranda custody." Id. The Court reasoned that the prisoner did not remain in custody for purposes of Miranda when he was returned to the general prison population because "the freedom-of-movement test identifies only a necessary and not a sufficient condition" for Miranda custody and because "lawful imprisonment imposed upon conviction of a crime does not create the coercive pressures identified in Miranda." Id. The Court did note that when the defendant was being interviewed by a police detective in an active investigation into additional crimes committed by the inmate, "[n]o one questions that Shatzer was in custody for Miranda purposes." Id. at 1224. Thus, Shatzer clarifies the outer bounds of when Miranda is needed in a prison setting: the mere fact of the prison setting alone is insufficient to trigger the Miranda

8

requirements, whereas a traditional police interrogation of an inmate does trigger the Miranda requirements.

While only Supreme Court jurisprudence is of ultimate significance in the section 2254 inquiry, case law from the federal circuit courts is relevant to the extent that holdings from these courts on similar facts may represent reasoned opinions of jurists on the necessity of Miranda warnings in these situations as clearly established by Supreme Court precedent.

Four cases from our sister circuits are of particular relevance here due to factual similarities. In three of these cases, the circuit courts found that no Miranda warnings were necessary. First, in Cervantes v. Walker, the Ninth Circuit found no Miranda warnings necessary when a deputy sheriff questioned a prisoner to ascertain the nature of a substance, thereby determined to be marihuana, which was discovered in the course of a routine search. The questioning in that case took place in a prison library and appeared to have been a spontaneous reaction to the discovery; therefore the Ninth Circuit found that the questioning was not a custodial interrogation but rather "on-the-scene questioning" to determine whether a crime was in progress. 589 F.2d 424, 429 (9th Cir. 1978). In considering whether the prison official's conduct would cause "a reasonable person to believe his freedom of movement had been further diminished," the court considered four factors: (1) the language used to summon the individual; (2) the physical surroundings of the interrogation; (3) the extent to which the prison officials confront the individual with evidence of his guilt; and (4) whether officials exerted any additional pressure to detain the individual. See id. at 428-29. Second, in United States v. Conley, the Fourth Circuit determined that an inmate was not "in custody" for Miranda purposes, where he was questioned about the murder of a fellow inmate while in a conference area awaiting

9

medical treatment. 779 F.2d 970, 971 (4th Cir. 1985). The court applied the four-part test from Cervantes in determining that Conley was not "in custody." Id. at 973. Third, in United States v. Scalf, the Tenth Circuit found that a prison guard's questioning of an inmate shortly after an attack involving handmade "knives," taking place through the inmate's cell bars, was not an interrogation requiring Miranda warnings. See 725 F.2d 1272, 1274 (10th Cir. 1984).

The fourth factually similar circuit court case is Fields v. Howes, 617 F.3d 813 (6th Cir. 2010), cert. granted sub nom Howes v. Fields, 131 S.Ct. 1047 (Jan. 24, 2011).[1] In that case, the petitioner prisoner had been questioned in a locked conference room by two deputies unaffiliated with the prison. Id. at 815. The Sixth Circuit held that Miranda warnings must be given when law enforcement officers remove an inmate from the general prison population and interrogate him regarding criminal conduct that took place outside the jail or prison. Id. at 820.

DISCUSSION

Wilson contends that his Miranda rights were violated by the questioning following the altercation and the use of his statements in his state criminal trial. He argues that he was in custody for purposes of Miranda because he was immediately detained by correctional officers, handcuffed, and isolated from other prisoners for the purpose of an investigation. He asserts that the correctional officers began their investigation by confronting him with evidence of his fight with Lanier and that they continued to gather evidence for use in his trial from that point

---

[1] Our understanding is that Howes v. Fields has not yet been set for oral argument and hence will likely not be decided until the October 2011 term.

10

forward.

The question before this court is whether Supreme Court case law delineating the circumstances of when a prison inmate is under custodial interrogation for purposes of Miranda establishes Wilson's right to Miranda warnings with sufficient clarity so that the Louisiana court was objectively unreasonable in concluding otherwise. If this court determines that a reasonable jurist could find, as the state court did, that the prison guards' questioning of Wilson was more like general on-the-scene questioning, rather than a custodial interrogation, this court must deny federal habeas relief. See Miranda v. Arizona, 86 S.Ct. at 1629 ("Our decision is not intended to hamper the traditional function of police officers in investigating crime...General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding."). In order to determine whether the Louisiana court's finding was objectively unreasonable, we examine the facts of this case as compared to the facts from the Supreme Court cases and circuit court cases discussed above.

One fact having particular importance is that Wilson's questioning was conducted by a guard employed at the prison in which he was incarcerated, rather than by an outside state official. This fact distinguishes this case from the relevant Supreme Court cases in which the interrogations found to require Miranda warnings were undertaken by outside state officials. See Mathis, 88 S.Ct. at 1503 (IRS agent questioned inmate); Shatzer, 130 S.Ct. at 1215-16, 1224 (police detective not affiliated with prison questioned inmate). In contrast, in all of the analogous circuit court cases in which Miranda warnings were found unnecessary, the questioning of the prisoner had been undertaken by a member of the prison staff. See Conley, 779 F.2d at 971-73 (questioning by prison guard); Cervantes, 589 F.2d at 428 (questioning by the

11

deputy sheriff, who worked at the county jail where defendant was being held); Scalf, 725 F.2d at 1275 (questioning by correctional officer employed at prison). In Conley, the Fourth Circuit explicitly contrasted statements made by the defendant to a prison guard, on the one hand, and statements made to an FBI investigator, on the other hand; the court noted with approval the exclusion from evidence of statements made to the FBI investigator because he was "in a different category...He's an outside agent who has come in." Conley, 779 F.2d at 974 n.5. The Ninth Circuit in Cervantes also stressed this factor, distinguishing Mathis by stating that "[t]he questioning of Mathis by a government agent, not himself a member of the prison staff, on a matter not under investigation within the prison itself may be said to have constituted an additional imposition on his limited freedom of movement, thus requiring Miranda warnings." Cervantes, 589 F.2d at 428. Finally, in Fields v. Howes, which is now pending before the Supreme Court, the Sixth Circuit distinguished its facts from those of the other circuit court cases just discussed because the questioning was by "state agents unaffiliated with the prison" rather than on-the-scene questioning by prison officials. Fields, 617 F.3d at 821 (and also because the questioning concerned "criminal conduct that took place outside the jail or prison," id. at 820).[2]

In addition to the identity of the questioner, Wilson's physical circumstances during the questioning are also relevant. Wilson was handcuffed, isolated from the rest of the prison population and questioned in

[2]We note that in Fields, Sixth Circuit Judge McKeague concurred in the result, considering himself bound to that result by earlier Sixth Circuit precedent (Simpson v. Jackson, 615 F.3d 421 (6th Cir. 2010)). Fields, 617 F.3d at 824. However, if not so bound, Judge McKeague would have denied § 2254 relief "because 'fair-minded jurists could disagree over whether [Fields] was in custody,' [and therefore] the state court's decision that Fields was not in custody was not objectively unreasonable." Id. at 828.

an office, from which he was not free to go at any point during the interview. These physical circumstances, while as a general matter supportive of Wilson's right to Miranda warnings, nonetheless do not present a situation where it was unreasonable for the state court to have found that Miranda warnings were not necessary. Such a finding is not contrary to Supreme Court precedent, because Mathis did not describe the physical circumstances of the interrogation. Further, Wilson's physical circumstances were only slightly more indicative of custody than the circumstances in the circuit court cases of Conley and Cervantes, where Miranda warnings were not required. See Conley, 779 F.2d at 971 (inmate questioned while handcuffed in small conference room in prison "control center," where he was awaiting transfer to the infirmary for medical treatment needed following the altercation); Cervantes, 589 F.2d at 526-27 (inmate questioned in small prison library, where the inmate was awaiting a move to another cell). Furthermore, Wilson was isolated from the prison population as a part of the prison's usual immediate "post-fight" procedure, designed to protect the safety of the prison by ensuring non-contact with the other inmates and securing the area. And, Lanier, a victim of Wilson's assault, and Wilson were both handcuffed and subjected to the same sort of routine immediate post-fight questioning in separate rooms.

Finally, while the intentions of the prison guards in questioning Wilson are not of independent determinative significance, see Mathis, 88 S.Ct. at 1505 ("We find nothing in the Miranda opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody."), the fact that the guards did not even know that Edwards had been hurt, and merely thought they were investigating a fairly typical altercation between Wilson and Lanier, is

13

relevant in the sense that it likely lessened the accusatory nature and therefore the coerciveness of the interview situation. See, e.g, Cervantes, 589 F.2d at 428 (listing "extent to which he is confronted with evidence of his guilt" as a factor in determining whether an inmate was "in custody.").

In sum, because the questioning was conducted by members of the prison staff, using the prison's routine immediate "post-fight" procedure to ensure the safety of the general prison population, it was not objectively unreasonable for the state court to conclude that this was more like general on-the-scene questioning (see Miranda, 86 S.Ct. at 1629) rather than a custodial interrogation of the type addressed by the Supreme Court in Mathis and Shatzer. Therefore, the state court's determination that Miranda warnings were not required in order to admit Wilson's incriminating statements as evidence at his trial did not constitute an "unreasonable application" of "clearly established Federal Law, as determined by the Supreme Court of the United States." For the foregoing reasons, federal habeas relief must be denied under the plain standard of AEDPA. See, e.g. Harrington, 131 S.Ct. at 785. The judgment of the district court dismissing Wilson's section 2254 petition is

AFFIRMED.