RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

RANDALL LEE FIELDS,

        *Petitioner-Appellee,*

    *v.*

No. 09-1215

CAROL HOWES,

        *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-13373—Victoria A. Roberts, District Judge.

Argued: March 5, 2010

Decided and Filed: August 20, 2010

Before: CLAY and McKEAGUE, Circuit Judges; POLSTER, District Judge.[*]

─────────────────

**COUNSEL**

**ARGUED:** Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Elizabeth L. Jacobs, Detroit, Michigan, for Appellee. **ON BRIEF:** Brian O. Neill, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellant. Elizabeth L. Jacobs, Detroit, Michigan, for Appellee. Randall Lee Fields, Detroit, Michigan, pro se.

     POLSTER, D. J., delivered the opinion of the court, in which CLAY, J., joined. McKEAGUE, J. (pp. 16-22), delivered a separate concurring opinion.

───────────

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

1

———————————

## OPINION

———————————

DAN AARON POLSTER, District Judge.  Appellant appeals the district court's conditional grant of the petition of writ of habeas corpus pursuant to 28 U.S.C. §2254. The district court found that the Michigan Court of Appeals unreasonably applied established federal law in determining that a confession made by Appellee was properly admitted into evidence.  For the following reasons, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

Appellee Randall Lee Fields was incarcerated at the Lenawee County Sheriff's Department for disorderly conduct on December 23, 2001, when a corrections officer escorted him from his cell to a locked conference room in the main area of the sheriff's department.  Fields was not advised of where he was being taken or for what purpose. He was wearing an orange jumpsuit, but was not handcuffed or otherwise chained.

In the conference room, Fields was questioned by Deputy David Batterson and Deputy Dale Sharp about his relationship with Travis Bice, whom Fields had met when Bice was a minor.  The questioning commenced between 7:00 p.m. and 9:00 p.m. and lasted for approximately seven hours.  Fields was not read his Miranda rights but was told that if he did not want to cooperate he was free to leave the conference room at any time.  Leaving the locked conference room would have taken nearly twenty minutes, as a corrections officer would have had to have been summoned to return Fields to his cell.

Fields did not ask for an attorney or to go back to his cell.  However, he told the officers more than once that he did not want to speak with them anymore.  At one point in the interview, Fields became angry and started yelling. Deputy Batterson testified that he  told Fields he was not going to tolerate being talked to like that and that Fields was welcome to return to his cell.  Additionally, Deputy Sharp testified that Deputy Batterson told Fields that if he continued to yell the interview would be terminated.

Fields testified that he was told to "sit my fucking ass down" and that "if I didn't want to cooperate, I could leave."  (Dist. Ct. Doc. 15 at 24.)

During the interview, Deputy Batterson told Fields that there had been allegations of a sexual nature involving Bice.  Fields initially did not acknowledge any sexual relationship with Bice, but he eventually admitted to masturbating Bice and engaging in oral sex with him on at least two occasions.  Prior to trial in the Lewanee County Circuit Court, the trial judge denied Fields' motion to suppress these statements.  At trial, over the renewed objection of defense counsel, Deputy Batterson testified to Fields' jailhouse admissions.  Fields was ultimately convicted of two counts of third-degree criminal sexual conduct and was sentenced on December 5, 2002, to a prison term of ten to fifteen years.

Fields filed an appeal of right in the Michigan Court of Appeals on three grounds.  The ground relevant to the instant appeal asserted that "[t]he trial court violated Mr. Fields' due process rights by admitting his alleged custodial statement where Mr. Fields was in custody in the county jail and the Lenawee County sheriff interrogated him for as much as 7 hours without providing *Miranda* warnings."  (*See* Dist. Ct. Doc. 35 at 2.)  The Michigan Court of Appeals affirmed the trial court, holding that because Fields "was unquestionably in custody, but on a matter unrelated to the interrogation" and "was told that he was free to leave the conference room and return to his cell ... [but] never asked to leave ... Miranda warnings were not required ..." *People v. Fields*, No. 246041, 2004 WL 979732, at *2 (Mich. App. May 6, 2004).  The Michigan Supreme Court denied Fields leave to appeal the Michigan Court of Appeals' decision. *People v. Fields*, 689 N.W.2d (Mich. 2004) (table).

Fields then filed a pro se petition, pursuant to 28 U.S.C. §2254, for a writ of habeas corpus on the same grounds as his direct appeal to the Michigan Court of Appeals.  The district court conditionally granted Fields's habeas petition, holding that the state court unreasonably applied *Mathis v. United States*, 391 U.S. 1 (1968) and that the state court's error was not harmless.  Appellant Carol Howes, Warden of the

Lakeland Correctional Facility in Coldwater, Michigan, has appealed the district court's decision.

## II.  STANDARD OF REVIEW

The district court's grant of a writ of habeas corpus is reviewed de novo.  *Miller v. Webb*, 385 F.3d 666, 671 (6th Cir. 2004).  Findings of fact are reviewed for clear error unless the district court's decision is based on the transcripts from the petitioner's state court trial, in which case the findings of fact are reviewed de novo.  *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000).  Questions of law and mixed questions of law and fact are also reviewed de novo.  *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009).

## III.  ANALYSIS

Appellant argues that the district court misinterpreted and erroneously applied 28 U.S.C. §2254(d) by determining that the state court adjudication was objectively unreasonable.[1]

28 U.S.C. §2254(d)(1), which is part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. §2254(d)(1).

---

[1] Appellant also argues that the district court erred by providing a defendant greater federal constitutional protection in a state court than in the majority of federal circuits and in using §2254(d) to limit state jurisprudence by ruling that the state appellate court's legal conclusions must directly derive from Supreme Court holdings. These arguments are immaterial. If the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, Fields is entitled to habeas relief.

The district court made no findings of fact because the parties agreed there were no factual disputes. Thus, we are left to examine, de novo, whether the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law.

A state court decision is contrary to clearly established federal law as determined by the Supreme Court if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 406 (2000); *Thaler v. Haynes*, __ U.S. __, 130 S.Ct. 1171, 1173-74 (2010). A state court unreasonably applies clearly established federal law if the state court identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the state prisoner's case. *Thaler*, 130 S.Ct. at 1173-74. A state court's application of federal law must be "objectively unreasonable" to be an unreasonable application of federal law under §2254(d)(1). *Williams*, 529 U.S. at 409; *McDaniel v. Brown*, __ U.S. __, 130 S.Ct. 665, 673 (2010). Critically, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Nevertheless, if the Supreme Court has not "broken sufficient legal ground to establish [a] ... constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar" under either the contrary to or unreasonable application standard. *Williams*, 529 U.S. at 381.

The Fifth Amendment provides that no person "... shall be compelled in any criminal case to be a witness against himself ..." U.S. CONST. amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966), the Supreme Court held that this privilege against self-incrimination applies to a criminal suspect subjected to custodial interrogation. Specifically, statements taken during a custodial interrogation cannot be admitted to establish the guilt of the accused unless the accused was provided a full and

effective warning of his rights at the outset of the interrogation process and knowingly, voluntarily and intelligently waived his rights.  *Id.*  Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his  freedom of action in any significant way."  *Id.*

*Miranda* only applies if the suspect was (1) interrogated while (2) in custody. *See e.g., Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) ("It is clear therefore that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation").  Interrogation under *Miranda* is "express questioning or its functional equivalent" that law enforcement officers "should  know [is] reasonably likely to elicit an incriminating response."  *Id.* at 301-02.  Appellant does not dispute that the two law enforcement officials' seven hour questioning of Fields constituted an interrogation. Therefore, we must only determine whether Fields was in custody for purposes of *Miranda*.

"Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).  "Although the circumstances of each case must certainly influence a determination of whether a suspect is in custody for purposes of receiving of *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (*quoting Mathiason*, 429 U.S. at 495).

In *Mathis v. United States*, 391 U.S. 1 (1968), the Supreme Court held that "nothing in the Miranda opinion ... calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody."  While the petitioner in *Mathis* was serving time in a state prison for an unrelated conviction, an IRS agent questioned him about tax refunds he had claimed on his individual income tax returns.  The agent did not read the petitioner his Miranda rights prior to obtaining documents and oral statements subsequently used to convict the petitioner of two counts of knowingly filing a false claim.  At trial, the district court

denied the petitioner's attempts to suppress the evidence elicited by the revenue agent. On appeal, the circuit court affirmed the district court.

The Supreme Court reversed the lower courts, finding that the petitioner was entitled to receive a Miranda warning prior to questioning by the government agent. Specifically, the Supreme Court rejected the respondent's contentions that *Miranda* did not apply because: (1) the questions asked were part of a routine civil, rather than criminal, tax investigation; and (2) the petitioner was in jail for a separate offense than that for which he was being questioned. The respondent's first contention was rejected because, as occurred with the defendant in *Mathis*, civil tax investigations frequently lead to criminal prosecutions. In rejecting the second distinction, the Supreme Court found that requiring Miranda warnings only where questioning occurs in connection with the case for which a suspect is being held in custody "goes against the whole purpose of the Miranda decision which was designed to give meaningful protection to Fifth Amendment rights." *Id.* at 4.

The central holding of *Mathis* is that a Miranda warning is required whenever an incarcerated individual is isolated from the general prison population and interrogated, i.e. questioned in a manner likely to lead to self-incrimination, about conduct occurring outside of the prison. In the instant case, the district court determined that the Michigan Court of Appeals unreasonably applied *Mathis* by concluding that the investigators need not have provided Miranda warnings to Fields because the interrogation was unrelated to the crime for which he was being held in custody. Though we agree with the district court's decision, we believe that the Michigan Court of Appeals' decision was contrary to, as opposed to an unreasonable application of, *Mathis*. In its opinion, the Michigan Court of Appeals explicitly stated that Fields "was unquestionably *in custody*, but on a matter unrelated to *the interrogation*," yet still concluded that Miranda warnings were not required. *People v. Fields*, No. 246041, 2004 WL 979732 at \*2 (Mich. App. May 6, 2004) (emphasis added). The Michigan Court of Appeals did not cite *Mathis* nor any case relying upon *Mathis* in its decision. However, the material facts in this case are indistinguishable from *Mathis*. In both cases, the imprisoned suspect was interrogated

about a matter unrelated to his offense of incarceration. Yet, while the Supreme Court in *Mathis* held that the suspect was entitled to a Miranda warning prior to interrogation, the Michigan Court of Appeals ruled that a Miranda warning was not required. The Michigan Court of Appeals therefore arrived at a conclusion contrary to clearly established federal law.

Appellant contends that federal law does not necessarily require Miranda warnings any time an incarcerated individual is questioned about a subject unrelated to the offense of incarceration. As there was no Sixth Circuit decision on point at the time of briefing,[2] Appellant cites numerous cases from other Circuits to support its position.

However, these cases are readily distinguishable from *Mathis* and do not provide persuasive authority to this case, which may explain why none of them were cited by the Michigan Court of Appeals. Four cases[3] involved on-the-scene questioning by prison officers concerning an offense committed in the jail itself. *See Miranda*, 384 U.S. at 477 ("General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding"). Five

---

[2]The only Sixth Circuit case cited by Appellant, *United States v. Ozuna*, 170 F.3d 654 (6th Cir. 1999), involved questioning that did not take place in prison.

[3]*Cervantes v. Walker*, 589 F.2d 424 (9th Cir. 1978) (inmate questioned about marijuana discovered during standard search of belongings); *United States v. Scalf*, 725 F.2d 1272 (10th Cir. 1984) (inmate questioned in his cell immediately after stabbing another inmate); *Garcia v. Singletary*, 13 F.3d 1487 (11th Cir. 1994), *cert. denied*, 513 U.S. 908 (1994) (inmate questioned after corrections officer extinguished fire in inmate's cell); *United States v. Conley*, 779 F.2d 970 (4th Cir. 1985), *cert. denied*, 479 U.S. 830 (1986) (inmate questioned in aftermath of murder of fellow inmate while waiting for medical treatment in conference room).

cases[4] involved voluntary confessions made by individuals who were not interrogated in isolation.[5]

Because Fields was removed from the general prison population for interrogation about an offense unrelated to the one for which he was incarcerated, *Mathis* is the applicable law. None of the cited appellate cases, all of which were decided subsequent to *Mathis*, erode its essential holding: Miranda warnings must be administered when law enforcement officers remove an inmate from the general prison population and interrogate him regarding criminal conduct that took place outside the jail or prison.

The Michigan Court of Appeals correctly determined that Fields was "unquestionably" in custody and was subject to interrogation. Fields was taken from his prison cell to a conference room without explanation. The conference room was locked. Though told that he could leave at any time, exiting the conference room was a lengthy process that required a corrections officer to be summoned. Thus, Fields faced the type of "restraint on freedom of movement" necessary to be deemed in custody. *See Mathiason*, 429 U.S. at 495. Furthermore, Fields was questioned for approximately seven hours. The subject of the questioning was his sexual relationship with a minor, which was not related to his offense of incarceration. This was assuredly an interrogation as it was express questioning that was reasonably likely to elicit an incriminating response. *See Rhode Island v. Innis*, 446 U.S. 291, 301-02 (1980).

Despite properly determining that Defendant was in custody and subject to interrogation, the Michigan Court of Appeals erroneously concluded that "there must be

---

[4]*Flittie v. Solem*, 751 F.2d 967 (8th Cir. 1985), *cert. denied*, 479 U.S. 830 (1986) (incriminating statements made to informant visiting inmate in visitor's room of prison); *United States v. Willoughby*, 860 F.2d 15 (2d Cir. 1988), *cert. denied*, 488 U.S. 1033 (1989) (same); *Leviston v. Black*, 843 F.2d 302 (8th Cir. 1988), *cert. denied*, 488 U.S. 865 (1988) (inmate initiated police inquiry and two interviews), *United States v. Turner*, 28 F.3d 981 (9th Cir. 1994), *cert. denied*, 513 U.S. 1158 (1995) (inmate called postal inspector on telephone); *United States v. Menzer*, 29 F.3d 1223 (7th Cir. 1994), *cert. denied*, 513 U.S. 1002 (1994) (inmate advised that officer was coming to speak with him, questions were sent beforehand, appearance was voluntary and took place in an unlocked room with windows facing the general prison administrative area).

[5]Also inapposite is *Alston v. Redman*, 34 F.3d 1237 (3d Cir. 1994), *cert. denied*, 513 U.S. 1160 (1995), where the defendant, who while in pretrial detention signed an undelivered form letter invoking his right to counsel, was questioned three days later at a police station after being read and then waiving his Miranda rights. It is unclear to the Court how this case supports Appellant's argument.

some nexus between [the elements of custody and interrogation] in order for *Miranda* to apply." *Fields*, 2004 WL 979732, at *2. The Michigan Court of Appeals relied upon *People v. Honeyman*, 546 N.W.2d 719, 723 (Mich. Ct. App. 1996), which created the "nexus" test without citation to federal authority. *Fields*, 2004 WL 979732, at *2 n.3. However, *Miranda* and its progeny only require a finding of custodial interrogation; there is no nexus requirement. *See Miranda*, 384 U.S. at 444 ("the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege of self-incrimination"); *Thompson v. Keohane*, 516 U.S. 99, 104 (1995) (" ... the *Miranda* Court held, suspects interrogated while in police custody *must* be told they have a right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney ...") (emphasis added). Thus, the Michigan Court of Appeals erred first by searching for a nexus between custody and interrogation and then by finding that, because Defendant was in custody "on a matter unrelated to the interrogation," Defendant wasn't "in custody for the purpose of determining whether Miranda warnings were required." *Fields*, 2004 WL 979732, at *2.

Any doubt that Fields was in Miranda custody is erased by both this Court's recent decision in *Simpson v. Jackson*, __ F.3d __, No. 08-3224, 2010 WL 2771861 (6th Cir. July 13, 2010), and the Supreme Court's opinion in *Maryland v. Shatzer*, __ U.S. __, 130 S.Ct. 1213 (2010). As an initial matter, it should be noted that although *Simpson* was argued after our case and both opinions were written concurrently,  the *Simpson* decision was issued prior to this opinion. We are therefore bound by its ruling. Because *Simpson* only briefly discussed the Miranda custodial interrogation issue, we are including a detailed explanation of our ruling.

In *Simpson*, the incarcerated appellant, on separate occasions, made incriminating statements to police officers questioning him about a crime unrelated to his offense of incarceration. The appellant was not read his Miranda rights on either occasion. The statements were then used as evidence to support criminal charges against the appellant.

The appellant moved to suppress these statements at trial, but the state trial judge denied the motion and admitted his statements. The appellant was subsequently convicted. On direct appeal, the Court of Appeals of Ohio upheld the appellant's conviction. The appellant then petitioned for a writ of habeas corpus pursuant to 28 U.S.C. §2254, which was dismissed by the district court. The appellant appealed the dismissal to our court. The panel reversed the district court's dismissal and granted the appellant's petition, holding that the state court's decision was contrary to factually indistinguishable Supreme Court precedent. Specifically, the panel found "no relevant factual distinction between *Mathis* and the circumstances of [the appellant's statements]." *Simpson*, 2010 WL 2771861, at *18.

In both our case and *Simpson*, "as in *Mathis*, state agents unaffiliated with the prison isolated an inmate and questioned him about an unrelated incident without first giving Miranda warnings." *Id*. Moreover, the state court judges in both cases, without even citing *Mathis*, ruled that statements obtained from such questioning was admissible. And in both cases, the failure to heed *Mathis* and forego the issuance of Miranda warnings was "improper" and "any resulting statements [should have been] suppressed" by the trial court. *Id*.[6]

In *Maryland v. Shatzer*, the Supreme Court found an incarcerated prisoner subjected to questioning on an unrelated crime to be in custody for Miranda purposes.[7] The *Shatzer* defendant, who was serving a sentence for an unrelated child-sexual-abuse offense, was questioned at the correctional institution by a detective on August 7, 2003, regarding allegations he had sexually abused his son. Before any questions were asked, the defendant was read his Miranda rights. Mistaking the detective for an attorney, the defendant waived his rights. However, once the detective explained he was there to question the defendant about the allegations that he abused his son, the defendant

---

[6] The panel in *Simpson* noted that the state court had relied on *Cervantes v. Walker*, *supra*, but readily distinguished that case because the prisoner was being questioned about something that happened in prison. *Simpson*, 2010 WL 2771861, at *17 n.7.

[7] Though *Shatzer* was decided subsequent to both the Michigan Court of Appeals' decision and briefing of the instant appeal, we questioned counsel about this case during oral argument.

declined to speak to the detective without an attorney present and was released back into the general prison population. Approximately two-and-a-half years later, on March 2, 2006, a new detective visited the defendant, who had been transferred to a different facility, to question him about the same allegations of abusing his son. The defendant was read his Miranda rights, and a written waiver of these rights was obtained. The defendant was questioned for approximately thirty minutes in a maintenance closet. He never requested an attorney be present or referred to his prior refusal to answer questions.

Five days later, the detective returned to the correctional facility with another detective to administer a polygraph examination to the defendant. The defendant was read his Miranda rights, and a written waiver was again obtained. When the detectives began questioning the defendant, he became upset and incriminated himself by saying "I didn't force him." *Id.* at 1218. He then requested an attorney, ending the interrogation.

At trial, the defendant moved to suppress the incriminating statements made in 2006 based on his invocation of his Miranda rights in 2003. The trial court denied his motion to suppress, reasoning that there was a break in custody between 2003 and 2006, and therefore, the 2006 waiver of his Miranda rights superseded the defendant's request for an attorney in 2003. The defendant was subsequently found guilty of sexual child abuse of his son. The Court of Appeals of Maryland reversed and remanded, and the Supreme Court of the United States granted a writ of certiorari.

Holding that a break in custody of more than two weeks terminates an invocation of Miranda protections, the Supreme Court reversed the judgment of the Court of Appeals of Maryland and remanded the matter. The Court's opinion discussed whether incarceration necessarily constitutes custody, which it had "never decided ... and [had] indeed explicitly declined to address..." *Id.* at 1224. Concluding that "all forms of incarceration" satisfy the restraint on freedom of movement analysis of custody, the Court nevertheless held that "lawful imprisonment imposed upon conviction of a crime does not create the coercive pressures identified in *Miranda*" and therefore Miranda

rights are not triggered simply because an individual is incarcerated.  *Id*.  That is, Miranda custody requires both a restraint on movement, which is always satisfied by incarceration, and coercive pressure.

Critically for the pending appeal, the Court noted that "[n]o one questions that Shatzer was in custody for Miranda purposes during the interviews with Detective Blankenship in 2003 and Detective Hoover in 2006."  *Id*.  A prisoner is in custody when he is removed from his "normal life" by being taken from his cell to an isolated area, such as a closet or conference room, for the purpose of interrogation.  *Id*. at 1225.  Once the prisoner is then released back into the general prison population, away from his interrogators, he is no longer in custody.

Thus, faced with a factual scenario of an inmate being removed from his cell and being interrogated about an unrelated crime, the Supreme Court expressed no doubt that a Miranda warning was required.  The question facing the Court was whether the inmate's 2003 invocation of his Miranda rights precluded law enforcement from soliciting a Miranda warning in 2006 and interrogating the inmate again.  The Supreme Court's unambiguous conclusion that the *Shatzer* defendant was in Miranda custody on both occasions serves to bolster our determination regarding Fields.

Moreover, in finding that the defendant in *Shatzer* was in custody, the Supreme Court did not address the physical circumstances of the interrogation, such as whether the interrogation room was windowless, whether the defendant was handcuffed, whether the defendant was told he could stop the interrogation or the length of the interrogation. The Court's approach, combined with the holding in *Simpson*, provides us the necessary guidance to formalize a bright line test for determining whether Miranda rights are triggered for an incarcerated individual.  A Miranda warning must be given when an inmate is isolated from the general prison population and interrogated about conduct occurring outside of the prison.

The critical issue in this inquiry becomes whether the prisoner is isolated from the general prison population for questioning.  "Miranda ... was designed to guard against ... the 'danger of coercion [that] results from the *interaction* of custody and

official interrogation.'" *Id*. at 1224 (*citing Illinois v. Perkins*, 496 U.S. 292, 297 (1990)) (emphasis in *Shatzer*, brackets in original). While locking doors or handcuffing the inmate enhances the potential for coercion, isolation is perhaps the most coercive aspect of custodial interrogation. Assuming the inmate is indeed undergoing interrogation, being placed in a room, apart from others within the prison population, sequesters the prisoner with his accusers in the type of scenario for which *Miranda* seeks to provide protection. *See Id.* at 1224. Moreover, "[w]hen a prisoner is removed from the general prison population and taken to a separate location for questioning, the duration of that separation is assuredly dependent upon his interrogators." *Id*. at 1225 n.8 (emphasis removed from original). The sense of control exercised by interrogators over the prisoner in determining the length of the prisoner's removal from his normal life further reinforces the element of coercion. A prisoner may feel he has no choice but to cooperate and provide the exact answers his interrogators seek to elicit, regardless of the potential for incrimination. We believe a reasonable person in an inmate's position would view such interrogation conducted in isolation as coercive, thus necessitating a Miranda warning. *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) (in determining custody, the court must assess "how a reasonable man in the suspect's situation would have understood his situation").

This bright line approach will obviate fact-specific inquiries by lower courts into the precise circumstances of prison interrogations conducted in isolation, away from the general prison population. Furthermore, law-enforcement officials will have clearer guidance for when they must administer Miranda warnings prior to a prison interrogation.

The Michigan Court of Appeals' conclusion that, although Fields was in custody, interrogation without a Miranda warning was permissible because the questioning concerned an unrelated matter contradicts clearly established federal law as determined by the Supreme Court in *Mathis*. In order for habeas relief to be warranted, however, we must also determine if the admission of Fields' involuntary confession was harmless error. *Arizona v. Fulminante*, 499 U.S. 279, 308 (1991). An error that "'had substantial

and injurious effect or influence in determining the jury's verdict,'" is not harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (*quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946). Even if there is only "grave doubt about whether a trial error of federal law has substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation omitted). Moreover, "the risk that the confession is unreliable, coupled with the profound impact that the confession has upon the jury, requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless." *Fulminante*, 499 U.S at 296.

There is no question that the failure to suppress Fields' confession was not harmless error. In fact, Appellant has not even challenged this portion of the district court's ruling. Fields was convicted of two counts of third-degree criminal sexual conduct. As noted by the district court, the critical evidence against Fields was his confession and the victim's testimony. The victim, however, recanted his testimony on several occasions, including telling two law enforcement officers and at least three other individuals that the sexual conduct with Petitioner never occurred. Accordingly, Fields' confession must have heavily influenced the jury's decision. The district court therefore correctly concluded that the trial court's error was not harmless and that, consequently, habeas relief was merited because the Michigan Court of Appeals' decision contradicted federal law as established by the Supreme Court.

## IV.  CONCLUSION

For the reasons discussed *supra*, the district court's conditional grant of the petition of writ of habeas corpus pursuant to 28 U.S.C. §2254 is hereby **AFFIRMED.**

---

**CONCURRENCE**

---

McKEAGUE, Circuit Judge, concurring. I agree that the outcome of this case is controlled by this court's prior decision in *Simpson v. Jackson*, No. 08-3224, 2010 WL 2771861 (6th Cir. July 13, 2010). However, I write separately because I disagree with both *Simpson*'s and the majority's interpretation of two Supreme Court cases: *Mathis v. United States*, 391 U.S. 1 (1968) and *Maryland v. Shatzer*, – U.S. –, 130 S.Ct. 1213 (2010). In particular, in contrast to the majority and *Simpson*, I do not believe that *Mathis* obviates the need for the context-specific custody analysis clearly established by *Miranda* and its progeny. Moreover, I do not agree with the majority that *Mathis* established a bright line test to the effect that, "[a] Miranda warning *must* be given when an inmate is isolated from the general prison population and interrogated about conduct occurring outside of the prison." Majority Op. at 13 (emphasis added). Instead, applying the context-specific *Miranda* custody analysis under the deferential review mandated by AEDPA, I believe that the proper course of action in this case would be to reverse the district court and uphold the state court's determination.

I read *Mathis* as standing for a narrower proposition than does the majority. The Court in *Mathis* addressed the government's argument that it should: "narrow the scope of the Miranda holding by making it applicable only to questioning one who is 'in custody' in connection with the very case under investigation." 391 U.S. at 4. The Court found that there was "nothing in the Miranda opinion which call[ed] for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody." *Id.* at 4-5. Therefore, *Mathis* holds that *Miranda* applies to a person interrogated while in prison on charges unrelated to the investigation for which he is interrogated, but it does not establish that such a person is automatically in custody or entitled to *Miranda* warnings anytime he is interrogated away from the general prison population. Instead, this determination depends on the context–specific analysis of whether the inmate is deemed to be "in custody"; *i.e.*,

whether he was subject to the sort of isolation and coercive influence that trigger the need for *Miranda* warnings.[1]  Therefore, I would not read the "essential holding" of *Mathis* to be that "Miranda warnings must be administered when law enforcement officers remove an inmate from the general prison population and interrogate him regarding criminal conduct that took place outside the jail or prison." Majority Op. at 9.

Furthermore, I also do not read *Shatzer* as broadly as does the majority here. Admittedly, *Shatzer* does state that: "[n]o one questions that Shatzer was in custody for Miranda purposes during the interviews with Detective Blankenship in 2003 and Detective Hoover in 2006." 130 S.Ct. at 1224.  However, the fact that no one questioned whether Shatzer was in custody, does not mean (or clearly establish) that anytime an inmate is removed from the general prison population and interrogated he is "in custody" for *Miranda* purposes.  Instead, it only means that the parties, unlike the government in this case, did not make an issue of the "in custody" requirement in relation to those specific interrogations.

Consequently, instead of adopting a bright line rule governing the interrogation of those already in prison and mandating that we find that Fields was in custody, I believe that the normal, context–specific analysis articulated in *Miranda* and its progeny applies here and that this analysis should determine whether Fields was in custody for *Miranda* purposes.  In speaking of "custody," the language of the *Miranda* opinion indicates that "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." *Miranda v. Arizona*, 384 U.S. 436,

---

[1]Furthermore, while *Mathis* did find that "the courts below were wrong in permitting the introduction of petitioner's self-incriminating evidence given without warning of his right to be silent and right to counsel," the opinion does not provide the facts surrounding the interrogation.  391 U.S. at 5. Instead, it merely notes that petitioner was "interviewed" while in a penitentiary. *Id.* at 4 n.2.  Clearly, applying the context-specific analysis articulated in *Miranda* and its progeny, there are circumstances in which a prisoner interrogated while incarcerated on separate charges would not be "in custody."  There are also circumstances in which a prisoner would be "in custody."  The facts of *Mathis*, as set forth in the opinion, simply do not provide a basis on which to draw a bright line – presumably because that was not the issue presented to the Court (the government sought to make *Miranda* applicable "only to questioning one who is 'in custody' in connection with the very case under investigation").  Therefore, I would not read the opinion as establishing the bright line rule that the majority does, especially given the Court's instructions that ""*Miranda* is to be enforced 'only in those types of situations in which the concerns that powered the decision are implicated.'" *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984).

478 (1966). However, as the Court's cases "make clear . . . the freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody" and "*Miranda* is to be enforced 'only in those types of situations in which the concerns that powered the decision are implicated.'" *Shatzer*, 130 S.Ct. at 1224 (quoting *Berkemer*, 468 U.S. at 437). The Court noted in *Berkemer* that:

> The purposes of the safeguards prescribed by Miranda are to ensure that the police do not coerce or trick captive suspects into confessing, to relieve the inherently compelling pressures generated by the custodial setting itself, which work to undermine the individual's will to resist, and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary.

*Id.* at 433 (internal citations and quotations omitted). Indeed, under the *Miranda* custody test: "[t]wo discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99 (1995); *see also Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004) ("Our more recent cases instruct that custody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances."); *Stansbury v. California*, 511 U.S. 318, 322-23 (1994) (per curiam) (noting that courts "must examine all of the circumstances surrounding the interrogation" and that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned"). Consequently, the *Miranda* custody analysis in this case is shaped by the circumstances surrounding Fields' interrogation, including the fact that Fields was already incarcerated on separate charges and, therefore, that he lived in prison. *See Shatzer*, 130 S.Ct. at 1224 (noting that "[i]nterrogated suspects who have previously been convicted of crime live in prison" and that "incarceration pursuant to a conviction" is a prisoner's "normal life" and, thereby, recognizing that the prison setting is not inherently coercive).

Turning to the particulars of this case, the Michigan Court of Appeals was the last state court to issue a reasoned opinion considering this issue. That court noted that the fact that "a defendant is in prison for an unrelated offense when being questioned does not, without more, mean that he was in custody for the purpose of determining whether Miranda warnings were required." *People v. Fields*, 2004 WL 979732, *2 (Mich. Ct. App. May 6, 2004) (citation omitted). The court also noted that:

> [D]efendant was unquestionably in custody, but on a matter unrelated to the interrogation. Although defendant was not read his Miranda rights, he was told that he was free to leave the conference room and return to his cell. Defendant never asked to leave. Because *Miranda* warnings were not required, the trial court did not err in denying defendant's motion to suppress his statement.

*Id.* Obviously or "unquestionably," Fields was in custody in the sense that he was incarcerated on a matter unrelated to the interrogation. However, this does not mean that he was "in custody" for purposes of the *Miranda* and, indeed, the Michigan Court of Appeals went on to describe the fact that Fields would have felt free to terminate the interview and leave, which is critical to the *Miranda* custody determination. *Id.* In particular, even though Fields was interrogated in a separate conference room, he was told that he was free to leave the conference room and return to his cell; consequently, the Michigan Court of Appeals concluded that Fields was not subject to the sort of coercion necessary to trigger *Miranda* warnings because he was not in custody for purposes of *Miranda*.[2]

We view this determination under AEDPA which, to grant relief, requires that we find the state court's decision to be "contrary to, or involve[] an unreasonable application of, clearly established Federal law" as established "by the Supreme Court." 28 U.S.C. § 2254(d)(1). A state-court decision is "contrary to" clearly established federal law if: (1) the state court applies a rule that contradicts the governing law set forth by the Supreme Court in its cases, or (2) the state court confronts a set of facts that

---

[2]The Michigan Court of Appeals did not mention *Mathis* because it did not need to: *Mathis* merely instructed courts to apply *Miranda* in this context, which the Michigan Court of Appeals did.

are materially indistinguishable from those presented in a Supreme Court decision and nevertheless arrives at a result different from Supreme Court precedent. *Williams*, 529 U.S. at 405-06. In order to constitute an "unreasonable application" of clearly established federal law, a state court's application of federal law to the facts of the case must be "objectively unreasonable." *Id.* at 409; *see also Renico v. Lett*, – U.S. –, 130 S. Ct. 1855, 1862 (2010). The Supreme Court has stressed that "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of federal law." *Id*. at 410 (emphasis in original); *see also Alvarado*, 541 U.S. at 665 (conducting AEDPA review in the *Miranda* custody context and noting that: "We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a *de novo* matter. '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly.'").

As discussed above, the Michigan Court of Appeals' decision has not been shown to be contrary to clearly established Supreme Court precedent. That court did not apply a rule that contradicts the governing law set forth by the Supreme Court in its cases; instead, it applied the correct, context-specific *Miranda* custody test. Nor did the Michigan Court of Appeals arrive at a result different from Supreme Court precedent on a set of facts that are materially indistinguishable from a Supreme Court decision. Furthermore, while a close call, I cannot say that the Michigan Court of Appeals' decision applying the context-specific *Miranda* custody analysis is objectively unreasonable. The Michigan Court of Appeals provided the specific factual context surrounding the investigation:

> At trial, Deputy Batterson testified that he removed defendant from his cell, where he was jailed on domestic assault, and led him to a conference room. He told defendant that he wanted to speak with him in regard to the victim whom defendant indicated he knew. The interview began around 7:00 or 9:00 p.m. and ended around midnight. Defendant was not read his Miranda rights, but Deputy Batterson told him he was free to leave the conference room and return to his jail cell.

*Fields*, 2004 WL 979732 at *1. As noted above, the Michigan Court of Appeals found the fact that Fields was told that he was free to leave to be critical.

It is true that Fields had to leave his cell, and was escorted through a separate door into a conference room in a separate building, and that he was questioned at length.[3] However, Fields was a prisoner. So, the fact that he had to be escorted to the conference room, and could leave and return to his cell at any time, but only with an escort, were normal, routine features of his life as an inmate. While he did have to pass through the J-door, and the conference room was in a separate part of the building, the state court rightly noted that the fact that Fields was told he could leave at any time is of critical significance.[4] This, along with the fact that Fields was already accustomed to incarceration and its accompanying restraints, demonstrate that there were objective circumstances creating an interrogation environment in which a reasonable person, already imprisoned on separate charges, "would have felt free to terminate the interview and leave." *Alvarado*, 541 U.S. at 654-55.

In short, while the majority's bright line rule frees the courts from the task of scrutinizing individual cases to try to determine whether the suspect already incarcerated on separate charges was in custody for *Miranda* purposes, I do not believe that it is appropriate for this court to fashion such a rule under the constraints imposed by the AEDPA. Instead, we should apply the context-specific analysis articulated in *Miranda*

---

[3]The parties agreed to the facts surrounding the interrogation. (R. 19 at 4-9.) In particular, in order to get to the conference room, Fields had to pass through a separate door and Fields was not told he could terminate the questioning at any time, but he was told he could leave at any time and that he would be taken back to the cell. (*Id.*; R. 20-3 at 5, 14.) Fields had to pass through the "J door," which is the door that divides the jail from the Sheriff's Department. (R. 15 at 7.) The conference room where he was interrogated was just beyond the J door. Furthermore, Fields testified that the interview began at around 8:00 p.m. or 8:30 p.m. and ended around 1:30 a.m. or 2:00 a.m.

Fields also testified that he was told at one point to "sit my fucking ass down" and that "if I didn't want to cooperate, I could leave." (R. 15 at 24.) However, this statement makes it clear that continuation of the interview was up to Fields, and it would have indicated to a reasonable person that he was free to terminate the interview and leave. Consequently, it shows the absence of the type of coercive pressures relevant to the *Miranda* custody inquiry. Indeed, Fields testified that he "assumed" that if he asked to go back to his cell, he would be escorted back to his cell. (R. 15 at 27.)

[4]It also distinguishes this case from the concern in *Shatzer*, where the Court noted that, "[w]hen a prisoner is removed from the general prison population and taken to a separate location for questioning, the duration of that separation is assuredly dependent upon his interrogator," because Fields controlled the duration of his stay. 130 S.Ct. at 1225 n.8.

and its progeny to determine whether Fields was "in custody."   Under these circumstances, because "fair-minded jurists could disagree over whether [Fields] was in custody," the state court's decision that Fields was not in custody was not objectively unreasonable.  *See id.* at 664.  However, since we are bound by *Simpson*, I concur.