Justice Ginsburg,
with whom Justice Breyer and Justice Sotomayor join,
concurring in part and dissenting in part.
Given this Court’s controlling decisions on what counts as “custody” for Miranda purposes, I agree that the law is not “clearly established” in respondent Fields’s favor. See, e. g., Maryland v. Shatzer, 559 U. S. 98, 112-114 (2010); Thompson v. Keokane, 516 U. S. 99, 112 (1995). But I disagree with the Court’s further determination that Fields was not in custody under Miranda. Were the case here on direct review, I would vote to hold that Miranda precludes the State’s introduction of Fields’s confession as evidence against him.
Miranda v. Arizona, 384 U. S. 436 (1966), reacted to police interrogation tactics that eroded the Fifth Amendment’s ban on compulsory self-incrimination. The opinion did so by requiring interrogators to convey to suspects the now-familiar warnings: The suspect is to be informed, prior to interrogation, that he “has a right to remain silent, that any statement he does make may be used as evidence against him, and that *518 he has a right to the presence of an attorney, either retained or appointed.” Id., at 444.
Under what circumstances are Miranda warnings required? Miranda tells us “in all settings in which [a person’s] freedom of action is curtailed in any significant way.” Id., at 467. Given the reality that police interrogators “trad[e] on the weakness of individuals,” i. e., their “insecurity about [themselves] or [their] surroundings,” id., at 455, the Court found the preinterrogation warnings set out in the opinion “indispensable,” id., at 469. Those warnings, the Court elaborated, are “an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere,” id., at 468; they “insure” that the suspect is timely told of his Fifth Amendment privilege, and his freedom to exercise it, id., at 469.
Fields, serving time for disorderly conduct, was, of course, “i[n] custody,” but not “for purposes of Miranda,” the Court concludes. Ante, at 514. I would not train, as the Court does, on the question whether there can be custody within custody. Instead, I would ask, as Miranda put it, whether Fields was subjected to “incommunicado interrogation ... in a police-dominated atmosphere,” 384 U. S., at 445, whether he was placed, against his will, in an inherently stressful situation, see id., at 468, and whether his “freedom of action [was] curtailed in any significant way,” id., at 467. Those should be the key questions, and to each I would answer “Yes.”
As the Court acknowledges, Fields did not invite or consent to the interview. Ante, at 514-515. He was removed from his cell in the evening, taken to a conference room in the sheriff’s quarters, and questioned by two armed deputies long into the night and early morning. Ibid. He was not told at the outset that he had the right to decline to speak with the deputies. Ibid. Shut in with the armed officers, Fields felt “trapped.” App. to Pet. for Cert. 71a. Although told he could return to his cell if he did not want to cooperate, id., at 71a-72a, Fields believed the deputies “would not *519 have allowed [him] to leave the room,” id., at 72a. And with good reason. More than once, “he told the officers ... he did not want to speak with them anymore.” 617 F. 3d 813, 815 (CA6 2010). He was given water, App. to Pet. for Cert. 74a, but not his evening medications, id., at 79a.* Yet the Court concludes that Fields was in “an interrogation environment in which a reasonable person would have felt free to terminate the interview and leave.” Ante, at 515 (quoting Yarborough v. Alvarado, 541 U. S. 652, 665 (2004)).
Critical to the Court’s judgment is “the undisputed fact that [Fields] was told that he was free to end the questioning and to return to his cell.” Ante, at 517. Never mind the facts suggesting that Fields’s submission to the overnight interview was anything but voluntary. Was Fields “held for interrogation”? See Miranda, 384 U. S., at 471. Brought to, and left alone with, the gun-bearing deputies, he surely was in my judgment.
Miranda instructed that such a person “must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation.” Ibid. Those warnings, along with “warnings of the right to remain silent and that anything stated can be used in evidence against [the speaker],” Miranda explained, are necessary “prerequisite^] to [an] interrogation” compatible with the Fifth Amendment. Ibid. Today, for people already in prison, the Court finds it adequate for the police to say: “You are free to terminate this interrogation and return to your cell.” Such a statement is no substitute for one ensuring that an individual is aware of his rights.
For the reasons stated, I would hold that the “incommunicado interrogation [of Fields] in a police-dominated atmosphere,” id., at 445, without informing him of his rights, dishonored the Fifth Amendment privilege Miranda was designed to safeguard.

Each night, Fields took an antidepressant and, due to his kidney transplant surgery, two antirejeetion medications. App. to Pet. for Cert. 79a.