Kenneth BUSTER, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

Nos. 2011–SC–000092–MR,
2011–SC–000093–MR.

Supreme Court of Kentucky.

Aug. 29, 2013.

Molly Mattingly, Assistant Public Advocate, for Appellant.

Jack Conway, Attorney General, Christian Kenneth Ray Miller, Assistant Attorney General, for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

Kenneth Buster appeals from his conviction of four counts of complicity to rape (victim under 12 years of age); and one count each of first-degree rape, first-degree sodomy, and first-degree sexual abuse. Buster entered a conditional guilty plea, reserving the right to appeal the trial court's denial of a motion to suppress statements made to a social worker. We affirm.

On October 1, 2009, the Cabinet for Health and Family Services ("Cabinet") was advised of an allegation of sexual abuse involving a minor female. As a result, Benson Bell, a social worker with the Cabinet, interviewed the alleged victim who claimed that Appellant had anal sex with her. Bell then spoke to Appellant's wife, Patricia Buster, who had also been named in the allegations. Patricia provided Bell with a list of names of children that Appellant had molested, claiming that she knew he had molested them because she had either taken part in, or witnessed, the acts.

In November 2009, Bell went to the Kentucky State Reformatory in Lagrange, Kentucky and interviewed Appellant about the allegations. Appellant was incarcerated there and serving a sentence in an unrelated case. It is undisputed that Bell did not give Miranda warnings to Appellant before questioning him. During the interview, Appellant admitted to numerous acts of sexual abuse involving multiple victims.

Appellant was ultimately charged with 718 counts of sexual crimes involving multiple alleged victims in Indictment No. 10-CR-00031, and an additional 60 counts of sexual crimes involving another alleged victim in Indictment No. 10-CR-00137. Prior to trial, defense counsel moved to suppress Appellant's statements to Bell on grounds that Appellant was not provided with Miranda warnings. Following a hearing, the trial court denied Appellant's motion, making extensive findings of fact and conclusions of law, including the following:

> The fact that someone is incarcerated on an unrelated charge does not mean that the prisoner is "in custody" for Miranda purposes.
>
> ... [T]his Court finds that it must consider the totality of the circumstances when it determines whether Buster was in custody for Miranda purposes. As a result, this Court has considered the following: (1) that Bell is a social worker without any power to arrest, and (2) that there is no evidence to suggest that Bell was working in conjunction with the Munfordville City Police Department or any other police agency when he visited with Buster. In addition, this Court has watched the videotaped interview and ascertained the following: (1) that Buster was not shackled, (2) that Buster appears to be comfortable as he drinks from a white cup, (3) that a guard identifies himself as being present, (4) that this guard never makes any further statements throughout this interview, (5) that this interview only takes approximately thirty minutes, (6) that Buster confirms that he was not coerced or forced to make any statement, and (7) that Buster admits that has [sic] statements were provided of his own free will. After considering the totality of the circumstances, this Court finds that Buster's Fifth Amendment right securing the privilege against self-incrimination has not been violated.

(Citations omitted).

Having so found, the trial court denied Appellant's motion to suppress the state-

ments made to Bell. Thereafter, pursuant to Appellant's conditional guilty plea, Appellant was sentenced to a total of 25 years imprisonment as follows. In Indictment No. 10–CR–00031, Appellant pled guilty to four counts of complicity to rape (victim under 12 years of age) and was sentenced to 25 years on each count, to run concurrently. In Indictment No. 10–CR–00137, Appellant pled guilty to one count each of first-degree rape, first-degree sodomy, and first-degree sexual abuse. He was sentenced to 25 years each on the rape and sodomy charges and five years on the sexual abuse charge, to run concurrently with each other and with the sentence in 10–CR–00031. This appeal followed.

When reviewing an order denying a motion to suppress, we consider the trial court's findings of fact "conclusive" if they are "supported by substantial evidence." RCr 9.78. "Using those facts [if supported], the reviewing court then conducts a de novo review of the trial court's application of the law to those facts to determine whether the decision is correct as a matter of law." *Commonwealth v. Jones,* 217 S.W.3d 190, 193 (Ky.2006). The only evidence presented at the suppression hearing was the testimony of Benson Bell. Appellant presented no evidence. Having reviewed the record, we adjudge the findings to be supported by substantial evidence, with the exception of the finding that Bell was not working in conjunction with law enforcement.

Next, we must determine whether the trial court properly determined that Appellant was not entitled to *Miranda* warnings. "In order to use statements, whether exculpatory or inculpatory, made by a defendant subjected to custodial interrogation, the prosecution must demonstrate that the Appellant was advised of his Fifth Amendment rights, including the right to remain silent and the right to an attorney." *Cummings v. Commonwealth,* 226 S.W.3d 62, 65 (Ky.2007) (citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). We have consistently recognized that "Section Eleven of the Constitution of Kentucky and the Fifth Amendment to the Constitution of the United States are coextensive and provide identical protections against self-incrimination." *Commonwealth v. Cooper,* 899 S.W.2d 75, 78 (Ky.1995).

As only "state action" implicates a defendant's rights under the Fifth Amendment of the United States Constitution and Section Eleven of the Constitution of Kentucky, *Adkins v. Commonwealth,* 96 S.W.3d 779, 790 (Ky.2003) (citing *Colorado v. Connelly,* 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)), we must initially determine whether Bell was a state actor. Although Bell is a social worker, the United States Supreme Court and this Court have recognized *Miranda's* applicability in situations where the interrogation is performed by someone other than a police officer. *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (psychiatrist) and *Welch v. Commonwealth,* 149 S.W.3d 407 (Ky.2004) (counselors).

In *Welch,* we held that counselors for a sexual abuse treatment program were state actors for purposes of *Miranda.* Welch, having been adjudicated a juvenile sexual offender, was committed to the Department of Juvenile Justice and required to participate in a sexual offender treatment program. As part of their treatment, participants in the program were "strongly encouraged" to admit and disclose all prior sexual misconduct. *Welch,* 149 S.W.3d at 409. After being intensely questioned by the counselors about not only the offense that resulted in his commitment but any other sexual misconduct as well, Welch disclosed to a counselor

several uncharged acts of sexual misconduct. The counselor notified police, resulting in a new criminal prosecution against Welch. Welch had received no *Miranda* warnings before making his disclosures to the counselor, nor any other notice that disclosures to the counselors could be used to initiate a new prosecution.

The trial court denied Welch's motion to suppress the statements made to the counselor and we reversed. After first determining that Welch was in custody based on his commitment to DJJ and his involuntary participation in the sexual offender treatment program, we held that the counselors were state actors for purposes of *Miranda*:

> The title and employer of the questioner are not the sole basis for determining state action; rather courts must determine whether the interrogation was such as to likely result in disclosure of information which would lead to facts that would form the basis for prosecution. In this case, the likelihood of such a disclosure was virtually overwhelming. Accordingly, the counselors who interrogated Appellant were state actors for the purpose of the Fifth Amendment, and Appellant should have been informed of his *Miranda* rights regarding his privilege against self-incrimination.

*Welch,* 149 S.W.3d at 411 (footnote and citations omitted).

Although the trial court made a finding that Bell was not working with police, this Court has previously adjudged Bell to be a state actor in connection with this matter in the case of [*Patricia*] *Buster v. Commonwealth,* 364 S.W.3d 157 (Ky.2012). Patricia Buster was also arrested as a result of the allegations at issue herein. At the police station, when advised of her *Miranda* rights by Police Chief Greg Atwell, Patricia told Atwell she had nothing to say to him. Moments later, Atwell asked Patricia if she would be willing to speak with Bell, who had interviewed her twice in the weeks leading up to her arrest. Patricia agreed to speak with Bell. Immediately thereafter, Bell spoke with Patricia and convinced her to give a statement to the police. Atwell then returned to the interview room and advised Patricia of her *Miranda* rights, which she waived. At Atwell's request, she then made a written statement confessing to numerous acts of sexual abuse.

Patricia ultimately entered a conditional guilty plea to four counts of complicity to first-degree rape, reserving the right to appeal the trial court's denial of her motion to suppress her confession. We reversed, holding that Bell and Atwell—by re-approaching and interrogating Patricia shortly after she had invoked her right to remain silent—had not scrupulously honored her right to cut off questioning and that her written statement was therefore inadmissible. We held that Bell was a state actor.

Although Bell's connection with police activity was more direct in Patricia Buster's case, we believe Bell was likewise a state actor for purposes of the present case. We previously recognized, in Patricia's case, that "Bell's role was an investigator for the Cabinet working in cooperation with the police." *Buster,* 364 S.W.3d at 165. The present case concerns the same investigation. As in Patricia's case, Bell was turning over to the police the information he had gathered in his interview with Appellant. His interrogation of Appellant was clearly "likely [to] result in disclosure of information which would lead to facts that would form the basis for prosecution." *Welch,* 149 S.W.3d at 411. Consistent with our holding in Patricia's case, we conclude once again that Bell was a state actor for purposes of *Miranda.*

■ Having so determined, we next turn to the question of whether Appellant was subjected to "custodial interrogation." Appellant's original brief to this Court cites *Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) and the Sixth Circuit's holding in *Fields v. Howes,* 617 F.3d 813 (6th Cir.2010) for the proposition that the "custody" requirement for *Miranda* is satisfied when an incarcerated individual is removed from the general prison population and isolated for questioning about conduct that occurred outside the prison. Because this is precisely the factual scenario presented by this case, Appellant argued that, per *Mathis* and *Fields,* he was in-custody for purposes of *Miranda.*

In *Mathis,* the petitioner, while incarcerated on an unrelated charge, was interviewed in the penitentiary by an IRS agent conducting a tax investigation. The IRS agent did not give Mathis *Miranda* warnings and, during the interview, elicited statements from Mathis which resulted in Mathis being charged with tax fraud. The trial court denied Mathis's motion to suppress and the statements elicited by the IRS agent were used against him at trial. The United States Supreme Court reversed, stating: "We find nothing in the *Miranda* opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody." *Mathis,* 391 U.S. at 4–5, 88 S.Ct. 1503. Accordingly, the *Mathis* Court went on to hold that introduction of Mathis's self-incriminating evidence given without *Miranda* warnings was reversible error.

In *Fields,* the Sixth Circuit interpreted *Mathis* as requiring that "*Miranda* warnings must be administered when law enforcement officers remove an inmate from the general prison population and interrogate him regarding criminal conduct that

took place outside the jail or prison." 617 F.3d at 820. Fields was incarcerated in a Michigan jail on a disorderly conduct charge when he was escorted by a corrections officer to a conference room. There, two sheriff's deputies questioned him about allegations that, before his incarceration, he had engaged in sexual conduct with a 12–year–old boy. To get to the conference room, Fields had to go down one floor and pass through a locked door. The questioning lasted between five and seven hours. At the beginning of the interview, Fields was told that he was free to leave and return to his cell and was told again later in the interview that he could leave whenever he wanted. The two deputies interviewing Fields were armed. Fields was not handcuffed or otherwise restrained during the interview. The door to the conference room was sometimes open and sometimes closed.

About halfway through the interview, after Fields had been confronted with allegations of sexual abuse, he became agitated and began to yell. One of the deputies, using an expletive, told him to sit down and that if he did not want to cooperate he could leave. Several times during the interview, Fields said that he no longer wanted to talk to the deputies but did not ask to go back to his cell. Fields eventually confessed to engaging in sexual acts with the boy. At no time was Fields given *Miranda* warnings or advised that he did not have to speak with the deputies.

After he was charged with criminal sexual conduct, Fields moved to suppress his confession on grounds that he was subjected to a custodial interrogation without *Miranda* warnings. The trial court denied the motion and Fields was convicted. After exhausting his appellate remedies in state court, Fields filed a petition for writ of habeas corpus in federal district court, which was granted. The Sixth Circuit af-

firmed, holding that Fields was in custody for purposes of *Miranda.* The Sixth Circuit ultimately adopted a "bright line test" for determining if *Miranda* rights are required for an incarcerated individual, holding that "[a] *Miranda* warning must be given when an inmate is isolated from the general prison population and interrogated about conduct occurring outside of the prison." *Fields,* 617 F.3d at 822.

In the ultimate outcome of the *Fields* case, however, the U.S. Supreme Court appeared to substantially modify the holding in *Mathis.* Our nation's highest court essentially held that not all *Miranda*-less questioning of suspects in prison is forbidden and stated:

> In sum, our decisions do not clearly establish that a prisoner is always in custody for purposes of *Miranda* whenever a prisoner is isolated from the general prison population and questioned about conduct outside the prison.
>
> Not only does the categorical rule applied [by the Sixth Circuit] below go well beyond anything that is clearly established in our prior decisions, it is simply wrong. The three elements of that rule—(1) imprisonment, (2) questioning in private, and (3) questioning about events in the outside world—are not necessarily enough to create a custodial situation for *Miranda* purposes.

*Howes v. Fields,* —— U.S. ——, 132 S.Ct. 1181, 1188–89, 182 L.Ed.2d 17 (2012) (footnote omitted).

The Supreme Court went on to reaffirm that whether an inmate is in custody for purposes of *Miranda* must be decided on a case-by-case basis. Considering the totality of the circumstances, the Supreme Court held that Fields was not entitled to *Miranda* warnings:

> Most important, respondent was told at the outset of the interrogation, and was reminded again thereafter, that he could leave and go back to his cell whenever he wanted. Moreover, respondent was not physically restrained or threatened and was interviewed in a well-lit, average-sized conference room, where he was not uncomfortable. He was offered food and water, and the door to the conference room was sometimes left open. All of these objective facts are consistent with an interrogation environment in which a reasonable person would have felt free to terminate the interview and leave.

*Id.* at 1193 (citations and internal quotations marks omitted).

We now turn to the question of whether Appellant, under the facts of this case, was in custody for purposes of *Miranda.* In other words, would a reasonable person (inmate) in Appellant's situation have felt free to terminate the interview and request to be returned to his cell? *Howes,* 132 S.Ct. at 1193–94. Appellant argues in his post-*Howes* supplemental brief that, under the totality of the circumstances, he was in custody for purposes of *Miranda.* In the alternative, he requests that this Court remand the matter to the trial court for a new suppression hearing given the lack of a record on several of the features deemed important in *Howes.*

The record is silent regarding how Appellant was summoned to the interview. As to what Appellant was told prior to the interview regarding any requirement to cooperate or speak with Bell, Bell testified:

> I explained the allegations to him, um, just as I've done many times before, just explained the allegations, explained why I was there, uh, explained what had transpired, um, and I also explained just as I do to anybody that there's two sides to every story, you know, that's not a, those were allegations, which means that there, it's not saying that you're guilty

walking in the door, it's just saying these allegations, these things had been said about you.

Although this part of the interaction was not recorded, Appellant presented no evidence to counter Bell's account of what was said or any evidence that he was otherwise threatened or coerced off-camera.

The interrogation took place in what appears to be a small interview room in the prison. The record is silent as to the location of the room or whether the door was open or shut. The only persons present were Appellant, Bell, and a prison guard who is not visible on the video. In *Howes,* however, the Supreme Court noted that an escort by a prison guard to an interview room would likely be an "ordinary and familiar attribute of life behind bars" and not the type of limitation of freedom of movement contemplated by *Miranda.* 132 S.Ct. at 1192. Bell sat at a desk with Appellant sitting in a chair across from him. The guard did not speak during the interview, other than to announce his name as being present for purposes of the video recording.

The fact that lends the most support to Appellant's argument that he was in custody for purposes of *Miranda* is that Bell did not tell him that he was free to leave and return to his cell. *Howes,* 132 S.Ct. at 1193. However, a number of other factors weigh against a determination of custody. The interrogation was brief, lasting less than thirty minutes as opposed to five to seven hours in *Howes.* Appellant was not shackled or otherwise restrained. Appellant appears comfortable and had a beverage. Moreover, Bell uses a calm, non-accusatory tone of voice to question Appellant, and at no time does Bell act or speak in an aggressive or hostile manner. At the close of the interview, Appellant agreed that he was not forced or coerced into saying anything and that everything he told Bell was of his own free will.

Considering the totality of the circumstances, the interrogation in this case does not appear to present a "serious danger of coercion," i.e., one in which a reasonable person would have felt he was not at liberty to terminate the interrogation and leave or, in this instance, ask to be returned to his cell. *Id.* at 1189. Accordingly, we hold that Appellant was not subjected to custodial interrogation for purposes of *Miranda* and, therefore, conclude that the trial court properly denied the motion to suppress.

For the aforementioned reasons, the judgment of the Hart Circuit Court is affirmed.

ABRAMSON, KELLER, SCOTT and VENTERS, JJ., concur.

NOBLE, J., dissents by separate opinion in which MINTON, C.J., joins.

NOBLE, J., Dissenting:

The majority opinion in this case does an excellent job of tracking the law necessary to analyze when an incarcerated person is "in custody" for purposes of invoking the *Miranda* warnings. However, I do not believe the record is complete enough to definitively conclude that Appellant was not in custody.

At various points during the description of how events transpired, the majority opinion says the record is silent or not clear. That being the case, then the very fact that Appellant was interviewed in a correctional facility where he was an inmate, standing alone, indicates that he was in custody. It is the Commonwealth's burden to establish that the circumstances did not amount to a custodial interrogation or that Appellant waived his *Miranda* warnings in a knowing manner. This record

does not clearly establish this, and I would not make the assumption that just because the interview was friendly and the Appellant was made comfortable that he was not nonetheless restrained. He was not told he could terminate the discussion at will, and he was not given the warning to put him on notice of his rights and the consequences of not asserting them. Generally, the inmates are not in charge of when they may come and go.

Consequently, I would reverse on the suppression issue. It is simply too easy to mislead an inmate into thinking he is not in custody and is not being interrogated when a social worker is sent in to do the questioning instead of law enforcement. The social worker was a cooperative state actor under these facts, and this makes the *Miranda* warnings more necessary than when a defendant is put on notice that he could be making incriminating statements by talking to identifiable police officers.

MINTON, C.J., joins.