# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-41192

United States Court of Appeals
Fifth Circuit

**FILED**
March 19, 2019

Lyle W. Cayce
Clerk

MARK ANTHONY DOLPH,

> Petitioner-Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:14-CV-163

---

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

A Texas jury convicted Mark Anthony Dolph of unlawful possession of a firearm by a convicted felon. The question presented is whether Dolph can overcome the Antiterrorism and Effective Death Penalty Act by showing, on the facts, the police violated *Miranda v. Arizona*, 384 U.S. 436 (1966). He cannot. Accordingly, we affirm the judgment of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-41192

## I.

On April 9, 2011, Officer Kelly Dial was patrolling an area known for drug activity when he saw a suspicious transaction in a parking lot. Three individuals drove into a convenience store parking lot, quickly exchanged something with an individual in that lot, and drove away without ever entering the store. Observing the individuals' car had expired tags, Officer Dial made a traffic stop.

Officer Dial observed the car had three occupants—the driver, a front seat passenger, and Mark Dolph, the only passenger in the back seat. Officer Dial asked the driver if narcotics or anything illegal were in the car. The driver responded that some crack cocaine might be in a towel on the back seat and consented to a search. Officer Dial accordingly asked the driver to step out of the car and asked Officer Scott Eudy, who was providing backup, to keep an eye on the towel.

Because the officers were outnumbered—three to two—Officer Dial believed the driver, along with the other car occupants, needed to be secured for the officers' safety.[1] Officer Dial handcuffed the driver after he exited the car and explained that he was not under arrest. Officer Dial then asked Dolph to step out of the car so that the back seat, including the towel, could be searched. When Dolph complied, Officer Dial handcuffed him and stated he was also not under arrest "yet." Officer Dial asked Dolph if there was anything illegal or dangerous in the backseat prior to searching the back seat. Dolph

---

[1] In its brief, the State alleges all three car occupants were handcuffed. In his supplemental reply brief, Dolph claims the front seat passenger was not handcuffed, but cites no trial testimony or record evidence to support that claim. Based on the trial testimony, it appears that Officer Dial handcuffed the driver and Dolph. Trial testimony also indicates the front seat passenger was secured during the search, but it is unclear whether she was secured with handcuffs or by another method. This dispute is ultimately immaterial to our resolution of Dolph's claim.

2

replied that a pistol was in the backseat.  Officer Dial peered in the backseat but did not immediately see a gun.  He asked Dolph where it was.  Dolph said the gun was was next to the towel and that he was holding it for a friend.  He also admitted he had previously been convicted of burglary and forgery.

Officer Dial searched the car and found the gun, a loaded .380 semi-automatic pistol, under the towel on the backseat.  He also ran a limited criminal history search, which confirmed Dolph had a felony conviction.  Based on Dolph's felony conviction and his admitted possession of a gun he was "holding [] for a friend," Officer Dial arrested Dolph.  Once he was back at the police station, Officer Dial ran a more complete criminal history.  It revealed that Dolph was convicted of forgery on April 24, 2006, for which he was sentenced to eighteen months' imprisonment.  Consequently, he was charged with violating a Texas statute that prohibits a convicted felon from possessing a firearm "before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later."  TEX. PENAL CODE § 46.04(a)(1).

During the subsequent trial, the jury was shown a video of the traffic stop, which included some of Dolph's statements.  Officer Dial also testified about the traffic stop.  He testified that Dolph said: (1) there was a gun under the towel in the back seat; (2) he was holding the gun for a friend; and (3) he was a convicted felon.  Officer Eudy testified to the same effect.

Dolph decided to represent himself for most of the trial.  Dolph did not object to the admission of the video or Officer Dial's testimony during the direct examination.  And during his cross-examination of Officer Dial, Dolph asked Officer Dial about some of the statements in the video.  During his re-cross of Officer Dial, however, Dolph approached the bench to ask the district court how his statements were admissible when he was not under arrest prior to the

search and was not given *Miranda* warnings.  The trial court told Dolph that his "argument that the statement should not be admissible has come after the statement's already been admitted, so any issue with respect to *Miranda* would have been waived because the videotape has already been admitted to the jury and the jury's already seen it."  The trial court further concluded that "because under the law the officer has a right to secure a person during . . . a search, a brief detention for officer safety—and the Supreme Court has affirmed that power on many occasions, as has [Texas's] Court of Criminal Appeals—it would not have been a meritorious argument anyway had [Dolph] raised it."

Accordingly, the trial proceeded, and the Texas jury convicted Dolph of unlawful possession of a firearm by a felon on February 7, 2013.  The judge sentenced him to 696 months of prison time and imposed a $10,000 fine.

Dolph appealed.  He argued his waiver of counsel and election to represent himself was not knowing and voluntary.  A Texas court of appeals modified the judgment to remove the fine assessment but otherwise affirmed the conviction and sentence.  *Dolph v. State*, 440 S.W.3d 898, 901 (Tex. App.— Texarkana 2013, pet. ref'd).  Dolph subsequently filed two state applications for writ of habeas corpus, asserting several grounds for relief.  One ground was that the trial court erred by admitting Officer Dial's testimony regarding the statements Dolph made prior to receiving *Miranda* warnings. The Texas Court of Criminal Appeals denied both applications without written order.

After his lack of success in state court, Dolph petitioned for a writ of habeas corpus under 28 U.S.C. § 2241 in federal court.  He asserted six grounds for relief.  One ground was that the trial court should have excluded Officer Dial's testimony regarding Dolph's statements because they were obtained in violation of his *Miranda* rights.  Dolph argued the trial court erred when it concluded he forfeited his *Miranda* claim by not objecting to the video's admission because the incriminating statement—that he was holding the gun

No. 17-41192

for a friend—was not on the video. The video of the traffic stop, however, was not part of the federal habeas record. The district court therefore could not fully assess which of Dolph's statements were played to the jury on the video.[2] It concluded, however, it was immaterial whether Dolph's characterization of the video was accurate because Dolph was not in custody when he gave the statements. The district court accordingly denied the habeas petition and refused to issue a certificate of appealability (COA).

Dolph applied for a COA from this Court. We granted the application but limited the COA to one issue—namely, whether Dolph's statements were obtained and admitted in violation of *Miranda*.

## II.

## A.

Our authority to issue habeas relief for Dolph is constrained by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). AEDPA "stop[s] just short of imposing a complete bar to federal court relitigation of claims already rejected in state court proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Accordingly, we cannot grant Dolph habeas relief unless he shows the state court's adjudication of his *Miranda* claim "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, or . . . 'involved an unreasonable application of' such law, or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Richter*, 562 U.S. at 100 (citations omitted) (quoting 28 U.S.C.

---

[2] The video of the traffic stop is also not in our record. Although the record demonstrates that the video clip played to the jury contained some of Dolph's statements, we cannot say with certainty which statements it contained.

§ 2254(d)).  Although we presume a state court's determination of a factual issue is correct, a determination of whether a person is in custody for *Miranda* purposes is a "mixed question of law and fact."  *Thompson v. Keohane*, 516 U.S. 99, 108, 112–13 (1995).  Therefore, "state-court 'in custody' determination[] warrant[s] independent review by a federal habeas court."  *Id.* at 116.

But to be contrary to clearly established federal law, the state court decision must "reach[] a legal conclusion in direct conflict with a prior decision of the Supreme Court or . . . a different conclusion than the Supreme Court based on materially indistinguishable facts."  *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010).  And to be an unreasonable application of clearly established law, it must be "so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question."  *White v. Woodall*, 572 U.S. 415, 427, 698 (2014) (quotation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

## B.

Our analysis begins "by determining the relevant clearly established law."  *Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004).  In *Miranda*, the Supreme Court held that "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way," he must receive warnings to inform him of his right to remain silent to protect "the privilege against self-incrimination" in the Fifth Amendment.  *Miranda*, 384 U.S. at 478–79. Accordingly, "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody,'" meaning a person is in "that sort of coercive environment to which

*Miranda* by its terms was made applicable, and to which it is limited." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

To determine "whether a person is in custody [for *Miranda* purposes]," a court must "ascertain whether, in light of 'the objective circumstances of the interrogation,' a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" *Howes v. Fields*, 565 U.S. 499, 509 (2012) (second alteration in original) (quoting *Stansbury v. California*, 511 U.S. 318, 322–323, 325 (1994) (per curiam), and *Thompson*, 516 U.S. at 112). And to determine how a reasonable person would feel, "courts must examine all of the circumstances surrounding the interrogation," including "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id.* (citations omitted). The "custody test" courts must apply is therefore not a specific rule, but a general one, which gives courts "more leeway . . . in reaching outcomes in case-by-case determinations." *Alvarado*, 541 U.S. at 664–65.

The Supreme Court has made clear that a restraint on an individual's "freedom of movement" is "only a necessary and not a sufficient condition for *Miranda* custody." *Fields*, 565 U.S. at 509 (quotation omitted). That is illustrated in *Berkemer v. McCarty*, 468 U.S. 420 (1984). In that case, a motorist was detained during a traffic stop, asked to perform a field sobriety test, and asked questions about whether he had been drinking. *Id.* at 423. After he failed the field sobriety test and admitted he had drunk two beers and smoked some marijuana, the officer formally arrested him. *Id.* The Court recognized "a traffic stop significantly curtails the 'freedom of action' of the driver and the passengers, if any, of the detained vehicle." *Id.* at 436. It further noted a traffic stop was a Fourth Amendment seizure and "few motorists would feel free either to disobey a directive to pull over or to leave the scene of a traffic

stop without being told they might do so." *Id.* at 436–37. But the Court also acknowledged the "noncoercive aspect[s]" of a traffic stop, such as the fact they occur in the public's view and are usually brief. *Id.* at 438–40. Accordingly, it held the motorist was not in custody until after he was formally arrested—after he had failed the field sobriety test and answered the officer's question about what intoxicants he had consumed. *Id.* at 423, 442.

## C.

Dolph's claim fails under these standards. At least three of the five relevant factors identified in *Fields*—the location of the questioning, its duration, and the statements made during it—could indicate Dolph was not in custody for *Miranda* purposes when he told Officer Dial he was holding the gun for a friend. 565 U.S. at 509. Dolph was not questioned in private or in isolation where he might be more vulnerable to coercion. *See McCarty*, 468 U.S. at 438 (explaining "importantly, the typical traffic stop is public"). Nor did Dolph experience threats or a "police dominated" atmosphere. *Id.* at 439; *see Alvarado*, 541 U.S. at 665 (noting the defendant was not threatened during the questioning); *United States v. Bengivenga*, 845 F.2d 593, 599–600 (5th Cir. 1988) (en banc) (concluding a woman was not in custody when she was "not completely isolate[d]" and there were only two agents in a room with five people). And Dolph was questioned only briefly during the stop and specifically told he was not under arrest.[3] Thus, based on the *Fields* "custody test," the state court's decision fits "within the matrix of [the Supreme Court's] prior decisions." *See Alvarado*, 541 U.S. at 665. At a minimum, a fairminded jurist of reason could so hold—which mandates denial of relief under AEDPA. *See*

---

[3] Although a reasonable person does not feel free to leave a traffic stop, *see McCarty*, 468 U.S. at 436, he might be more inclined to think he can refuse to answer questions and ask to leave when he is told he is not under arrest, *see Mathiason*, 429 U.S. at 495 (concluding it was "clear" a defendant was not in Miranda custody, in part, because he was "immediately informed that he was not under arrest").

*id.* at 664 (explaining a state court's decision is reasonable if "fairminded jurists could disagree over whether [the defendant] was in custody").

One factor—that Dolph was handcuffed—obviously cuts the other way. But as far as the briefs and our research reveals, there is no clearly established law that *Miranda* warnings must be given whenever an individual is handcuffed. *See Fields*, 565 U.S. at 509 ("Not all restraints on freedom of movement amount to custody for purposes of *Miranda*."); *United States v. Davis*, 773 F.3d 334, 340 (1st Cir. 2014) (noting the Supreme Court has never held "the use of handcuffs necessarily renders a [defendant] in custody for [*Miranda*] purposes"); *Wilson*, 641 F.3d at 103–04 (denying *Miranda* claim under AEDPA where prisoner "was handcuffed, isolated from the rest of the prison population and questioned in an office, from which he was not free to go at any point during the interview"). That too is sufficient to deny relief under AEDPA.[4]

At the very least, a state court could conclude these four *Fields* factors go in both directions.[5] We therefore cannot conclude the state court's decision

---

[4] Dolph correctly observes that one circuit held to the contrary in a direct criminal appeal. *See United States v. Newton*, 369 F.3d 659, 677 (2d Cir. 2004). But that is no help to Dolph because this is *not* a direct criminal appeal. This case arises under AEDPA. And under AEDPA and *Alvarado*, *see* 541 U.S. at 664, the state court could reasonably side with the numerous other courts that have held otherwise in a (lopsided) split. *See Davis*, 773 F.3d at 337, 340–41 (concluding it was not plain error for a district court to conclude a defendant was not in custody when he was handcuffed but informed "he was not under arrest"); *United States v. Leshuk*, 65 F.3d 1105, 1109–10 (4th Cir. 1995) ("[W]e have concluded that drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for *Miranda* purposes."); *United States v. Bautista*, 684 F.2d 1286, 1289, 1292 (9th Cir. 1982) (concluding police officers "may take precautionary measures," such as using handcuffs, if "reasonably necessary" and "[h]andcuffing a suspect does not necessarily dictate a finding of custody").

[5] The fifth and final *Fields* factor is indeterminate. Dolph was arrested, not released, at the end of the traffic stop. *See Fields*, 565 U.S. at 509. But so was McCarty, and the Supreme Court nonetheless concluded he was not in custody prior to his formal arrest. *See McCarty*, 468 U.S. at 423, 442.

to deny habeas relief on Dolph's *Miranda* claim was unreasonable. *See Alvarado*, 541 U.S. at 665 ("These differing indications lead us to hold that the state court's application of our custody standard was reasonable.").

The judgment of the district court is AFFIRMED.